[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Andre Dion Williams, appeals from a judgment of the Montgomery County Court of Common Pleas, convicting him of aggravated robbery in violation of R.C. 2911.01(A)(1), with a specification for possession of a firearm under R.C. 2941.145. On appeal, Williams contends that there was insufficient evidence to support either the specification of carrying a firearm or the element of carrying a deadly weapon required for his conviction on the aggravated robbery charge. Williams also contends that the trial court erred in allowing the jury to hear inadmissible hearsay evidence. Based on our review of the record, we conclude that there was sufficient evidence to support Williams convictions. We also find that the evidence to which Williams objects was not entered for the truth of the matter asserted and, therefore, was not inadmissible hearsay. Accordingly, we affirm the judgment of the trial court.
 I.
The crime for which Andre Williams was convicted occurred in the early hours of December 10, 1996. On that night, Christine Niffa was working at Christy's Drive-Thru, a business that she owned and operated. At 12:30 a.m., a man came into the building through the back door brandishing a gun. Niffa described the man as a short black man wearing a black coat, black gloves, and a black ski-mask that concealed part of his face, but not his nose and eyes. Niffa described the gun he was carrying as a small, silver gun with two barrels.
The man demanded that Niffa open the register, threatening to shoot her if she did not. Niffa opened the register. The man then grabbed the money from the register, but caused some to fall on the floor. To recover the money, the man nervously began scooping it up with one hand, while holding the gun in his other hand. While he did this, his gun went off twice. The man then hurried out of the store.
Niffa testified that she recognized the man who robbed her although he was wearing a mask. She explained that she recognized his eyes and nose, which were not covered, and she recognized the way he walked. The trial transcripts reveal that Williams has a distinctive, idiosyncratic way of walking.
Although she recognized the robber, Niffa could not recall his name. She testified that, after inquiring about him with some of her customers, she discovered that he was known in the neighborhood as "Peanut." She relayed this information to Detective Ritchey of the Dayton Police Department within a few days of the robbery. Recognizing the nickname as belonging to Williams, who lived near Niffa's store, Ritchey assembled a photographic line-up that included his picture. Niffa identified Williams from the line-up as the person who robbed her.
On February 5, 1997, Williams was indicted by the Montgomery County Grand Jury on one count of committing aggravated robbery with a deadly weapon against R.C. 2911.01(A)(1) with a specification of carrying a firearm against R.C. 2941.145. On June 26, Williams was tried before a jury, who returned a verdict of guilty on the charge and the specification. On July 17, 1997, the trial court sentenced Williams to an aggregate term of ten years imprisonment, with three years of actual incarceration. Williams now appeals from his conviction.
 I.
Williams raises as his first assignment of error the following:
 THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH THAT DEFENDANT POSSESSED AN OPERABLE FIREARM.
 With this assignment, Williams attacks the sufficiency of the evidence to support the jury's verdict against him on the firearm specification. More particularly, Williams contends that the state failed to prove that the gun used in the Drive-Thru robbery was an operable firearm.
The specification of which Williams was convicted is governed by R.C. 2941.145. That statute mandates a three-year prison term if an offender is proven to have "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." The word "firearm," for this purpose, is defined by R.C. 2923.11(B)(2), which states:
 "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
 According to this definition, a gun must be capable of shooting a bullet and, if not operable, must be readily rendered operable for the specification to apply. Thus, the Supreme Court of Ohio has held that the state must present evidence beyond a reasonable doubt that a firearm was operable at the time of the offense before a defendant can receive an enhanced penalty for a firearm specification. State v. Murphy (1990), 49 Ohio St.3d 206, syllabus. The court has also held, however, that "such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." Id.
In Murphy, the defendant was convicted after holding up a store with what appeared to be a small, silver derringer. He carried the gun wrapped in a shirt and threatened the clerk that he would kill him if he didn't surrender the money in the register. Id. at 207. The Court held that this evidence, together with eyewitness testimony about the gun's appearance, was sufficient, under a totality-of-the-circumstances test, to support the jury's determination of guilt beyond a reasonable doubt. Id. at 208. In Murphy, the circumstances included an express threat and the fact that the defendant took some care in how he carried the gun, by wrapping it up in a shirt. Later cases have found less evidence sufficient to support a conviction, however. See, e.g., State v. Dixon (1995), 71 Ohio St.3d 608,608. In State v. Thompkins (1997), 78 Ohio St.3d 380, 384, the Supreme Court concluded that even the implicit threat made by brandishing a weapon during a crime can be sufficient to support a jury's determination of operability.
In the instant case, the victim, Christine Niffa, gave the following testimony about the gun:
 Q. Do you know, do you remember anything about the gun? Anything you can tell us about that?
 A. Yes. He has a short, silver gun, and when he came in, he just pointed it at me and said, open or I shoot.
Q. Was it a big gun, a little gun?
A. A little gun.
 Q. How many barrels did it have? Do you remember?
A. It has two mouths.
* * *
 Q. What happened with the gun when he was fussing around?
A. The gun went off twice.
Q. Twice?
A. Yes.
Q. How did you react to that?
 A. I didn't. I was scared, you know, but I didn't see any damage on the wall, so I was thinking maybe it's a toy gun or something.
Q. Did it sound like a toy?
 A. No, because there was a light flashed, like that came out when the gun went off.
Q. You mean from the end of the barrel?
A. Right.
 Q. Did you look around to see if there was damage at all afterward?
 A. Yes, I looked around. My candy was damaged, but there was no hole on the wall.
 Niffa's testimony here provided more evidence of the weapon's operability than appeared in Thompkins, or even in Murphy. Niffa's testimony established that the robber made an explicit threat, that the gun went off with a noise and a flash from the barrel, and that the discharge caused some damage to her store's candy stock. Under the rules from Murphy and Thompkins, this affirmative evidence would be more than enough to support the jury's verdict.
The only difficult question under these circumstances arises from the counter-indications in Niffa's testimony, her suggestion that the gun might have been a toy. On cross examination of Niffa, Williams' trial counsel explored these counter-indications, as follows:
 Q. And you thought the gun was a toy gun? Was it a silvery color?
 A. Because after the incident, I went around to check for the hole on the wall. There was no hole. I thought maybe it was a toy gun because, to me, I am not familiar with guns. If it is a real gun, to me, I think there should have been a hole on the wall. But only thing damaged was my candy. I didn't see any bullets. So, I don't know.
 Williams contends that Niffa's doubts about the gun and the absence of bullet holes from the discharge precluded the jury from reaching a determination beyond a reasonable doubt as to the small gun's operability.
The relevant inquiry in reviewing a challenge to the sufficiency of evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of syllabus. Applying this analysis, we conclude that the evidence before the jury was sufficient to support Williams' conviction for the firearm specification. A reasonable juror could have concluded that the gun was proven an operable firearm beyond a reasonable doubt, based on the testimony that the robber threatened to shoot it, and that it made a noise and a flash when fired, causing some damage, even if minor. A reasonable juror could also have concluded that Niffa's speculation about the gun being a toy was based entirely on her failure to find a bullet hole in the wall, something which was explicable by means other than the gun's inoperability. Sufficiency is a legal standard. Thompkins, 78 Ohio St.3d at 386. When reviewing sufficiency, an appellate court cannot substitute its own judgment for that of the trier of fact. See State v.Nicely (1988), 39 Ohio St.3d 147, 156. Accordingly, appellant's first assignment of error is overruled.
 II.
Williams raises as his second assignment of error the following:
 THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO ESTABLISH THAT THE DEFENDANT POSSESSED A DEADLY WEAPON.
 With this assignment, Williams challenges the sufficiency of evidence supporting his conviction for aggravated robbery under 2911.01(A)(1). That statute provides in relevant part:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it. Williams contends that the state failed to prove the element of possessing a deadly weapon described in this section.
As noted earlier, however, R.C. 2923.11(B)(2) defines "firearm" as a type of deadly weapon. Thus, for the purposes of Title 29, all firearms are deadly weapons, although not all deadly weapons are firearms. The logical corollary following from this definition is that proof showing that a person used a firearm in violation of R.C. 2941.145 will also show use of a deadly weapon under 2911.01(A)(1). Consequently, for the reasons that we have already articulated in our analysis of appellant's first assignment of error, we find the evidence presented at trial was sufficient to support the jury's verdict. Appellant's second assignment of error is, therefore, overruled.
 III.
In his third assignment of error, Williams claims that:
 THE TRIAL COURT ERRED IN ADMITTING INADMISSIBLE HEARSAY TESTIMONY RELATIVE TO DEFENDANT'S IDENTITY.
 The testimony to which Williams objects is contained in the following colloquy:
 A. * * * When I came back, you know, I found out the name. I called back on the phone. I left a message for Ritchey that I know this boy. His name is Peanut. That's what they call him in the neighborhood.
Q. How did you find out his name was peanut?
A. Somebody told me.
[Defense Counsel]: Objection
THE COURT: I think the identity would be permissible.
[Defense Counsel]: Hearsay, Your Honor.
 THE COURT: Well, for identification purposes, it would meet the exception to the hearsay rule. You may proceed. Overruled.
 Q. You called Detective Ritchey and said his name is Peanut, is that right?
A. Yes.
 Williams does not assert error in regard to Niffa's description of her call to Detective Ritchey. Rather, he objects to the testimony about what one of her customers told her. Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Williams contends that the statement made by the customer was just such an out-of-court statement.
We agree that Niffa's testimony referred to the out-of-court statement of one of her customers. She herself had been unable to recall the name of the young man who robbed her. When she asked people who came into the Drive-Thru, one eventually informed her of the young man's nickname. The essence of the customer's statement appears to have been: "The young man that you are describing is known as Peanut."
Nevertheless, an out of court statement is only hearsay if it is entered for the truth of the matter asserted. In this instance, it is clear that this statement was not entered for its truth. Whether the customer's statement was true — i.e. whether someone named Peanut fit Niffa's description of the robber — had little bearing on whether Williams was guilty of the crime. The response, however, was important in explaining how Detective Ritchey was able to put together a photographic array that included Williams' picture. Thus, the purpose of this evidence was to establish a foundation that explained the course of the police investigation. "Where statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay." State v. Blevins (1987), 36 Ohio App.3d 147, 149. See also State v. Thomas, (1980), 61 Ohio St.2d 223, 232 ("It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed.")
In Blevins, the court of appeals recognized that this kind of foundational evidence may still be subject to exclusion if, in addition to explaining the course of the investigation, the statement also implicates the defendant in criminal wrongdoing.36 Ohio App.3d at 149. The Blevins court suggested that such evidence might be properly excluded as unfairly prejudicial under Evid.R. 403(A). Id. The instant case presented no such difficulties, however. The customer's statement did not identify Williams as the robber. It merely indicated that someone named "Peanut" resembled Niffa's description of the robber. Even if improperly entered for its truth, this statement would not have constituted prejudicial error. Niffa's identification of appellant from the photographic layout rendered inconsequential any evidence of identity that could be drawn from the customer's statement.
Because we find that the out-of-court statement in question was not offered for the truth of the matter asserted, we find it was not hearsay and, therefore, not improperly admitted. Accordingly, appellant's third assignment of error is overruled. Having overruled all three of appellant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
KERNS, J., and MILLIGAN, J., concur.
(Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District and Hon. John R. Milligan, Retired from the Court of Appeals, Fifth Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Carley J. Ingram
Darrell L. Heckman
Hon. John Kessler