THE STATE OF OHIO, APPELLEE, *v.* BLEVINS, APPELLANT.

(No. 86AP-418—Decided March 3, 1987.)

*Michael Miller,* prosecuting attorney, and *Joyce S. Anderson,* for appellee.

*James H. Banks, James K. Simakis* and *Nina Marie Najjar,* for appellant.

STRAUSBAUGH, P.J. Defendant appeals from the judgment of the court of

common pleas finding him guilty of trafficking in marijuana.

Defendant was indicted on one count of trafficking in marijuana in violation of R.C. 2925.03. The indictment arose from a series of incidents commencing sometime prior to May 30, 1985. The preliminary facts are not in dispute.

Defendant, Archie Blevins, was contacted by a friend, Kenny Dyer, who asked defendant several times to assist him in obtaining marijuana. The marijuana was to be sold to help Dyer pay for a kidney transplant for his mother. After initially resisting Dyer's overtures, defendant ultimately complied with Dyer's requests and sought out a person to supply Dyer with marijuana.

The supplier, "John Winslow," gave defendant a package which defendant assumed, although he did not know, contained marijuana. Dyer then arranged to meet defendant at a parking lot where defendant was to give the marijuana to some buyers. Defendant was met there by Dyer and his buyers, who were in fact undercover narcotics detectives.

There is conflicting testimony at this point as to whether defendant actually gave the marijuana to the agents or whether a price was discussed. Defendant testified that he never actually touched the "merchandise" or discussed a price for it. Rather, it was picked up from the floor of his truck by Detective Mary Kerins. Defendant stated that he believed the buyer was to pay Dyer for the delivery.

The detectives testified that defendant arrived with the merchandise in his truck and, on two separate occasions, discussed the price with them. No payment, however, was actually made.

From the foregoing, the jury returned a guilty verdict and defendant was sentenced to three to fifteen years, with six months' actual incarceration. He was also fined $5,000 and costs. Defendant appeals his conviction and raises six assignments of error:

"I. In allowing into evidence inadmissible hearsay evidence over the continuing objection of defendant-appellant, the trial court committed reversible error.

"II. In admitting into evidence the bags and marijuana and testimony related thereto without establishment of a proper chain of evidence, the trial court unduly prejudiced defendant-appellant, thus constituting reversible error.

"III. The properly admitted evidence pertaining to defendant-appellant's alleged involvement in trafficking in marijuana was insufficient to sustain the verdict of guilty and the trial court erred by sustaining the jury verdict of guilt on that charge.

"IV. The trial court erred in giving prejudicial, erroneous and confusing jury instructions regarding entrapment.

"V. Defendant-appellant was denied the effective assistance of counsel at trial in contravention of his constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution.

"VI. Defendant-appellant was denied a fair and impartial trial due to the trial court's demeanor in contravention of his constitutional rights to due process and equal protection under the Fourth and Fourteenth Amendments to the United States Constitution."

Defendant's first, and most vigorously asserted, assignment of error is that the court allowed into evidence inadmissible hearsay over defendant's objections, and thereby prejudiced his trial. That argument is in fact composed of two parts. Hearsay evidence was admitted, and the limiting instruction given was insufficient to cure the

prejudice caused by the erroneous admission. Both of these arguments must fail for the following reasons.

It is important to note at the outset that not all out-of-court statements are hearsay. Hearsay is an out-of-court statement offered in court as evidence to prove the truth of the matter asserted. Evid. R. 801(C). Some statements are merely verbal parts of acts and are, as the acts are themselves, admissible. McCormick, Evidence (3 Ed. Cleary Ed. 1984) 732, 733, Section 249. For example, where statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay. *State* v. *Thomas* (1980), 61 Ohio St. 2d 223, 232, 15 O.O. 3d 234, 240, 400 N.E. 2d 401, 408; *State* v. *Willis* (Dec. 15, 1981), Franklin App. No. 81AP-508, unreported, at 2; *State* v. *Robertson* (July 31, 1979), Franklin App. No. 78AP-584, unreported, at 14.

As Dean McCormick notes, however, the potential for abuse in admitting such statements is great where the purpose is merely to explain an officer's conduct during the course of an investigation. McCormick, *supra,* Section 249, at 734. Our review of the relevant Ohio case law finds no specific standards for the admission of such statements. Accordingly, certain conditions should be met before the court admits statements which explain an officer's conduct during the course of a criminal investigation.

The conduct to be explained should be relevant, equivocal and contemporaneous with the statements. 6 Wigmore, Evidence (Chadbourn Rev. Ed. 1976) 267, 268, Section 1772. Additionally, such statements must meet the standard of Evid. R. 403(A).

Applying those conditions to the instant case we find that the statements were admissible. Clearly, Dyer's statements were offered to show why and how Detectives Kerins and Diehl came to know defendant. Those statements were not offered for their truth, but to establish foundation for the detectives' subsequent testimony. Thus, the conduct explained has independent legal significance.

How the state's witnesses came to know defendant is relevant foundation evidence; however, their conduct alone is not enough absent words explaining their actions. For example, Detective Kerins related at trial that Dyer made a phone call. The detective's conduct after that point is meaningless unless it is established why the call was placed. Deductively, Dyer's statements in this regard aided in giving definite character to Detective Kerins' actions.

Under the facts here, the statements of Dyer were made contemporaneously with the investigatory efforts of the state. The third condition was therefore satisfied.

It can be argued, in applying the last condition, that the need for the statements was slight; however, the potential for misunderstanding was even less. Dyer's statements neither implicated nor cleared defendant. The statements merely described the circumstances of how the detectives met defendant.[1]

There were, however, two instances where the court did admit out-of-court statements, over defendant's objections, which should have been excluded. Both Detectives Kerins and Diehl were allowed to testify that Dyer told them defendant was the source of the marijuana. Since these statements

---

[1] Perhaps the better objection under these facts would have been on grounds of Evid. R. 402 or 403(B), since foundation can be established merely by stating, "I came to know defendant through my contact with X." The subsequent testimony on Dyer's statements had little, if any, relevance to the elements of the state's case.

clearly go to an element of the offense, and had little, if any, relevance to the circumstances of their meeting defendant, they should have been excluded.

Even if the statements were not offered for their truth, the content had potential for misunderstanding by the jury and should have been excluded under Evid. R. 403(A). However, in light of the additional evidence adduced at trial, the error was harmless since there is no reasonable possibility that the statements contributed to defendant's conviction. *Chapman* v. *California* (1967), 386 U.S. 18; *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, 2 O.O. 3d 249, 357 N.E. 2d 1035, vacated on other grounds (1978), 438 U.S. 911; *State* v. *Eubank* (1979), 60 Ohio St. 2d 183, 14 O.O. 3d 416, 398 N.E. 2d 567. Given the additional evidence in this record, it is unreasonable to believe that a juror would rely on two statements, made over the course of three days of testimony, in reaching the jury's verdict.

The effect of the court's error is further diminished when viewed in light of the limiting instruction given by the court pursuant to Evid. R. 105. Defendant cites *State* v. *Cloud* (1960), 112 Ohio App. 208, 212, 14 O.O. 2d 132, 135, 168 N.E. 2d 761, 764, as support for his position that, where a limiting instruction given to the jury is insufficient to cure the prejudice caused by the admission of testimony, reversible error exists. That case, however, is inapposite. In *Cloud,* the statements proffered were inadmissible for any purpose. Here, although inadmissible as hearsay testimony, Dyer's statements were admissible as background. Given that a jury is presumed to follow the instructions of the court, *Lakeside* v. *Oregon* (1978), 435 U.S. 333, 340, it must be assumed that Dyer's statements were received only for background purposes. Defendant's first assignment of error is overruled.[2]

As his second assignment of error, defendant asserts that the introduction of the marijuana into evidence, without first establishing the proper chain of custody, was reversible error. Since no objection was offered at trial on this issue, it is not properly before this court. *State* v. *Childs* (1968), 14 Ohio St. 2d 56, 43 O.O. 2d 119, 236 N.E. 2d 545; *State* v. *Morris* (1975), 42 Ohio St. 2d 307, 71 O.O. 2d 294, 329 N.E. 2d 85.

Nor would an objection have been proper. Although the state bears the burden of establishing a proper chain of custody, that duty is not absolute. *State* v. *Moore* (1973), 47 Ohio App. 2d 181, 1 O.O. 3d 267, 353 N.E. 2d 866. The state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur. *Id.* Moreover, breaks in the chain of custody go not to the admissibility of evidence, but to the weight afforded it. *Columbus* v. *Marks* (1963), 118 Ohio App. 359, 25 O.O. 2d 228, 194 N.E. 2d 791; *State* v. *Fleming* (May 10, 1983), Franklin App. No. 82AP-813, unreported, at 4-5.

Here, the marijuana offered at trial, and about which testimony was offered, was sufficiently identified. Detective Kerins testified that the

---

[2] At oral argument, defendant urged that even if Dyer was a co-conspirator, as the state argued, he would still be required to testify despite Evid. R. 801(D)(2)(e). We need not reach the issue on the force of *State* v. *Carver* (1972), 30 Ohio St. 2d 280, 59 O.O. 2d 343, 285 N.E. 2d 26, and our opinion in *State* v. *Milo* (1982), 6 Ohio App. 3d 19, 6 OBR 44, 451 N.E. 2d 1253. Clearly, it was not established, prior to the introduction of Dyer's statements, that a conspiracy existed. Such showing is a prerequisite to the admission of testimony under Evid. R. 801(D)(2)(e). *Milo, supra,* at 22, 6 OBR at 47, 451 N.E. 2d at 1257.

substance came in unusually wrapped packages. These packages were assigned an identification number according to standard police procedure. They were then opened for analysis and the contents were later placed in three bags along with the original plastic wrapping. Detective Diehl testified that he sent the bags to the lab for analysis. The state's expert testified that he performed the analysis on the contents of the bags, which tested positive for marijuana.

From the foregoing, it is evident that a proper chain of custody was established. Even if direct testimony did not affirmatively establish the identity of the substance, such identity could be established inferentially. *State* v. *Conley* (1971), 32 Ohio App. 2d 54, 62, 61 O.O. 2d 50, 55, 288 N.E. 2d 296, 301. Defendant's second assignment of error is not well-taken and is overruled.

Having held that the testimony of Detectives Kerins and Diehl was properly admitted, as was the physical evidence, defendant's third assignment of error is moot. It is axiomatic that unless a reviewing court finds no reasonable person could have convicted defendant under the facts adduced at trial, the conviction must stand. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212. Accordingly, defendant's third assignment of error is overruled.

Clearly it was error for the court below to instruct the jury that the defense of entrapment was not an affirmative defense in Ohio. *State* v. *Doran* (1983), 5 Ohio St. 3d 187, 5 OBR 404, 449 N.E. 2d 1295, mandates that courts instruct juries on entrapment as an affirmative defense. Failure to do so is reversible error. *Id.*

That error is cured, however, where the court explains its error and instructs the jury on the correct charge. *State* v. *Hairston* (1977), 60 Ohio App. 2d 220, 224-225, 14 O.O. 3d 191, 194, 396 N.E. 2d 773, 776. Defendant alleges that because two conflicting instructions were given regarding his defense, the jury was confused and he was prejudiced. We do not believe the charge, when viewed as a whole, was so prejudicial as to require reversal. See *State* v. *Porter* (1968), 14 Ohio St. 2d 10, 43 O.O. 2d 5, 235 N.E. 2d 520.

Here, the clarification was given immediately after its initial charge in order to comport with *Doran*. It was also repeated a second time after the jury requested it. That charge was read, verbatim, from 4 Ohio Jury Instructions (1987), Section 411.25. How an instruction could be prejudicial under these circumstances is unclear. Defendant's fourth assignment of error is overruled.

In his next assignment of error, defendant states that because defense counsel was ineffective, he was denied his Sixth Amendment right to counsel. Given the holding of *Strickland* v. *Washington* (1984), 466 U.S. 668, there is no merit in this argument.

In *Strickland,* the court enunciated two standards to be applied when reviewing an ineffective counsel claim: first, defendant must show counsel's performance was deficient; and, second, defendant must show that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial. *Id.* at 687. These standards are not mechanical rules, but rather focus on the fundamental fairness of the trial taken as a whole. *Id.* at 696. If the claim can be disposed of by showing the trial lacked sufficient prejudice, that course may be followed.

Ohio has not adopted more stringent requirements, but has followed the *Strickland* standards. *State* v. *Smith* (1985), 17 Ohio St. 3d 98, 100-101, 17 OBR 219, 220-221, 477 N.E. 2d 1128, 1131; *State* v. *Brooks*

(1986), 25 Ohio St. 3d 144, 147-149, 25 OBR 190, 192-194, 495 N.E. 2d 407, 410-412. The basic purpose behind the Sixth Amendment guarantee of effective assistance of counsel is to ensure that criminal defendants receive a fair trial. *Strickland, supra,* at 684-687. Therefore, judicial review of counsel's performance is to be carried out in light of all the circumstances surrounding the trial and must be highly deferential. *Id.* at 689. In Ohio, an attorney licensed in this state is presumed competent. *Vaughn* v. *Maxwell* (1965), 2 Ohio St. 2d 299, 301, 31 O.O. 2d 567, 568, 209 N.E. 2d 164, 166. Accordingly, defendant carries the burden of showing counsel's deficient performance prejudiced his trial. *Strickland, supra,* at 687-691. That burden is met only where the reviewing court finds, given the totality of the evidence, that but for counsel's errors, the jury's verdict would reasonably likely have been different. *Id.* at 691-696.

With these standards in mind, we turn to the instant case. Defendant makes much of ten instances where trial counsel allegedly erred. He conceded that each error, by itself, is not enough for the court to find that counsel was ineffective. Rather, the combined effect of the errors renders counsel's assistance ineffective. But this argument misses the mark. The test is not a retrospective grading system of what counsel did not do. *Id.* at 696-698. Rather, the inquiry is, absent counsel's error, would the outcome reasonably have been different? The focus of review is centered on both counsel's performance and the outcome of the trial. *Id.* at 691-696.

Here, counsel's trial strategy was to pursue a defense of entrapment. Given the record on appeal, that was a reasonable defense theory. Moreover, the record is replete with instances where that theory was vigorously pursued. Even assuming for purposes of this review that counsel's individual failures at trial constituted deficient performance, we fail to see how they prejudiced defendant's defense.

The prosecution established each element of the offense charged through the proper testimony of its witnesses. It is unclear how counsel's alleged errors affected defendant's case. The only witnesses available to rebut the state's testimony were defendant and Dyer. There is no evidence on record that Dyer would have testified on defendant's behalf. If in fact, as defendant asserts, Dyer was a police agent, it is unreasonable to believe he would testify for defendant.

Once the state established each element of the offense beyond a reasonable doubt, it was upon defendant to prove his affirmative defense. That he failed in this regard is not a valid basis for his claim of ineffective assistance of counsel.

Based on the whole record before us, we cannot say with reasonable probability that counsel's performance altered the result of the jury's verdict. Accordingly, defendant's fifth assignment of error is overruled.

Defendant's last assignment of error is that the demeanor of the trial court denied defendant a fair and impartial trial. No authority is cited as the basis for our review nor is there a clear legal theory presented to support this assertion. Nevertheless, we will consider the error as assigned.

Our review of the case law reveals a dearth of authority. However, the cases that do exist indicate that reversal will lie only where the court's conduct was highly prejudicial to one or the other party. See, *e.g., State* v. *Tuttle* (1903), 67 Ohio St. 440, 66 N.E. 524 (impeachment by court of a witness); *Miller* v. *Hesseldon* (1926), 115 Ohio St. 266, 152 N.E. 666 (digression during jury instruction); *Emery* v. *Toledo* (1929), 36 Ohio App. 488, 7 Ohio Law

Abs. 683, 173 N.E. 635 (qualification of a witness); *Montalto* v. *State* (1935), 51 Ohio App. 6, 4 O.O. 363, 199 N.E. 198 (prejudice of trial court). Mere offhand remarks, although not technically proper, may generally be cured by properly instructing the jury. *Emery, supra,* at 491, 7 Ohio Law Abs. at 683, 173 N.E. at 637.

Here, the record reveals no prejudice of the trial court in favor of the state or against defendant. Moreover, the court properly cautioned the jury to disregard any inadvertent remarks. In light of this, we find no merit to defendant's sixth assignment of error and it is overruled.

Having found no reversible error, defendant's six assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY and NUGENT, JJ., concur.

NUGENT, J., of the Court of Common Pleas of Cuyahoga County, sitting by assignment in the Tenth Appellate District.