OPINION
 "THE TRIAL COURT COMMITTED ERROR WHEN IT WRONGLY PERMITTED THE STATE, OVER APPELLANT'S OBJECTION, TO REFER TO AND ADDUCE HEARSAY TESTIMONY RECOUNTING THE CONTENTS OF THE AFFIDAVIT FOR SEARCH WARRANT AND THEN REFUSED TO GIVE THE JURORS A LIMITING INSTRUCTION REGARDING THE USES TO WHICH THEY COULD PUT THAT TESTIMONY. TR 169-172, 184-196, 346-354, 395-401."
The following facts are relevant to this appeal. On December 5, 1995, appellant was indicted on one count of aggravated trafficking in violation of R.C. 2925.03(A)(6). A jury trial began on July 1, 1996 and concluded on July 2, 1996. In its opening statement, the state referred to the search warrant and appellant objected. The state argued that the affidavit and search warrant were important in laying the foundation for the subsequent actions of the undercover detective. At trial, the undercover detective testified that he had set up surveillance of a house at 811 Vance Street in Toledo, Ohio ("the house") based upon information received from three confidential informants about narcotics trafficking from the house. Appellant lived with her mother and two children in the house. On cross-examination, the detective admitted that one of the confidential informants had a criminal record. The detective testified that the house was what was commonly called a "stash house" for a Toledo narcotics trafficker known as Fruit Loop.
The undercover detective also testified that on ten different occasions during the surveillance, he observed individuals going to the door of appellant's residence and meeting someone at the door; the individuals being there for thirty seconds to two minutes and then leaving. The undercover detective testified that, based upon his experience and training, this type of activity is indicative of narcotics trafficking. He testified that during his surveillance he observed one confidential informant hand money to a younger black woman who came to the door; he also observed the younger black woman re-enter the house for approximately thirty seconds and then return and hand the confidential informant something. He admitted that he could not say that he observed narcotics leave the hand of the younger black woman. The detective was approximately fifty yards away during this surveillance at approximately twelve noon on a sunny day. On cross-examination, the detective admitted that during his surveillance of the house, he never saw appellant.
The undercover detective also testified that a search warrant was executed on the house on November 21, 1995. He testified that the house and its occupants were secured for the officers' protection; the detective testified that in his experience, narcotics traffickers carry and have weapons in their residences. The undercover detective also testified that in approximately forty percent of his drug cases weapons have been involved. The detective's testimony was that he advised appellant of her Miranda rights. The detective testified that in response to his question about what Fruit Loop was keeping at the house, appellant stated that Fruit Loop put a safe in her bedroom closet in September. The undercover detective also testified that appellant told him the combination of the safe. His testimony was that when asked if she had a pretty good idea that when Fruit Loop entered her house and went to the safe he was bringing narcotics or taking narcotics from the safe, appellant said yes. The undercover detective also testified that appellant also told him that she would let Fruit Loop into the house because he did not have a key.
The detective testified that a K-nine positively alerted or "hit" on the safe.[1] The detective also testified that a gun, bullets, a cellular telephone and a bag of white powdered substance that later tested positive for cocaine were found inside the safe. The detective's testimony was that appellant admitted that a pager found in her bedroom was hers. A portable scale was found in a dresser drawer in appellant's bedroom. The detective testified such scales are used to weigh narcotics for sale. The detective also testified that he had personal knowledge that appellant was known by the name "The Babysitter." On cross-examination, the detective admitted that nowhere in the affidavit for the search warrant did it say that the detective had information that appellant was selling drugs.
A special agent with the United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms who was involved in the raid of appellant's residence also testified. This agent testified that when the safe found in appellant's closet was discovered, the safe was open approximately two to three inches. This agent also testified that when the K-nine alerted on the safe a second time, the dog locked the safe. The agent testified that the white powdered substance that later tested positive for cocaine weighed two hundred fifty three grams, over a quarter of a kilo. It was this agent's opinion that the going rate per gram of cocaine was $100 to $120. This agent also testified that she overheard appellant state that she sold marijuana out of her residence once. This agent's testimony was that when she escorted appellant to the bathroom, appellant told her that "the dope was Fruit Loop's." This agent also testified that she overheard the undercover detective advise appellant of her Miranda rights.
The detective handler of Boch, the K-nine that positively alerted on the safe, testified. This detective testified that when Boch hit on the safe, Boch scratched on the safe with his paws and the safe door opened. Boch hit again and closed the safe.
Appellant's mother testified on her behalf. Appellant's mother testified that she bought the cellular telephone for her son but that it had been turned off for quite some time. She denied ever seeing drugs in the house. On cross-examination, she admitted that her scheduled work hours were 8:30 a.m. to 5:30 p.m. but that she often went to work anywhere between 6:00 to 8:30 a.m.
Appellant, twenty-two at the time of her trial, testified that Fruit Loop was a childhood friend and he had asked her near the end of September to keep the safe for him until a later date. She testified that she had used the safe for her personal things for two weeks in October but at the time of the police raid she was not using the safe for her personal things. She testified that she had sold marijuana once because she needed money for baby diapers. She denied knowing that there were drugs in the house. Appellant testified that she had the pager so that her mother could contact appellant when she worked in case something happened with her children. She denied any knowledge of the scale which was found in a dresser drawer in her bedroom and testified that she did not use that dresser drawer. She denied being advised of her Miranda rights. On cross-examination, appellant also stated that she did not tell the undercover detective the combination to the safe but told him that the combination to the safe was on the papers in her top drawer. It was appellant's testimony that the undercover detective was lying when he testified that she said yes when asked if she had a pretty good idea that Fruit Loop was bringing narcotics or taking narcotics from the safe when he entered the house and went to the safe.
The jury found appellant guilty and she was sentenced on August 9, 1996. Appellant filed a timely notice of appeal.
In her assignment of error, appellant argues that the trial court erred when it refused to give a limiting instruction in regard to the undercover detective's testimony concerning the contents of the affidavit for the search warrant. Appellant cites the testimony of the undercover detective that "reliable informants" told him that Fruit Loop was a narcotics trafficker who stored his drugs at the house as hearsay for which the trial court should have given a limiting instruction. Although this court finds that the trial court should have given the limiting instruction, because the remaining evidence in favor of conviction was so overwhelming, this court also finds that this error was harmless.
The prosecution argues that the statements at issue are not hearsay but statements which were offered to explain a police officer's conduct while investigating a crime, citing State v.Blevins (1987), 36 Ohio App.3d 147, 149. The prosecution also argues that the undercover detective's testimony was not detailed but provided a skeletal background regarding the search warrant and affidavit.
In State v. Blevins, 36 Ohio App.3d at 149-150, the court stated:
 "It is important to note at the outset that not all out-of-court statements are hearsay. Hearsay is an out-of-court statement offered in court as evidence to prove the truth of the matter asserted. Evid.R. 801(C). Some statements are merely verbal parts of acts and are, as the acts are themselves, admissible. (Citation omitted.) For example, where statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay. (Citations omitted.)
 "As Dean McCormick notes, however, the potential for abuse in admitting such statements is great where the purpose is merely to explain an officer's conduct during the course of an investigation. (Citation omitted.) * * *
 "The conduct to be explained should be relevant, equivocal and contemporaneous with the statements. * * *
 "Applying those conditions to the instant case we find that the statements were admissible. Clearly, [the defendant's friend's] statements were offered to show why and how Detectives Kerins and Diehl came to know defendant. Those statements were not offered for their truth, but to establish foundation for the detectives' subsequent testimony. Thus, the conduct explained has independent legal significance.
"* * *
 "There were, however, two instances where the court did admit out-of-court statements, over defendant's objections, which should have been excluded. Both Detectives Kerins and Diehl were allowed to testify that [defendant's friend] told them defendant was the source of the marijuana. Since these statements clearly go to an element of the offense, and had little, if any, relevance to the circumstances of their meeting defendant, they should have been excluded.
 "Even if the statements were not offered for their truth, the content had potential for misunderstanding by the jury and should have been excluded under Evid.R. 403(A).[2] However, in light of the additional evidence adduced at trial, the error was harmless since there is no reasonable possibility that the statements contributed to defendant's conviction. (Citations omitted.) Given the additional evidence in this record, it is unreasonable to believe that a juror would rely on two statements, made over the course of three days of testimony, in reaching the jury's verdict." (Footnote added.)
Upon consideration of the above law and the facts in the case sub judice, this court finds that the prosecution elicited statements that went beyond what was necessary to establish a foundation for the undercover detective's subsequent actions. As in Blevins, the statements of which appellant complains "clearly [went] to an element of the offense, and * * * should have been excluded."
However, in deciding whether the admission of these hearsay statements was unduly prejudicial to appellant, this court is guided by State v. Kidder (1987), 32 Ohio St.3d 279, 284, in which the Ohio Supreme Court stated:
 "`[o]ur judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the * * * [statements] on the minds of an average jury.' (Citation omitted.) In the final analysis, the evidence in favor of conviction, absent the hearsay, must be so overwhelming that the admission of those statements was harmless beyond a reasonable doubt. (Citations omitted.) We find the error here was not so prejudicial as to require reversal."
This court, after looking at the entire record and leaving out the disputed evidence, finds that the remaining evidence in favor of the guilty verdict was overwhelming and any error in not giving the requested limiting instruction was not so prejudicial as to require reversal.
Accordingly, appellant's assignment of error is found not well-taken.
On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs for this appeal.
JUDGMENT AFFIRMED.
 Peter M. Handwork, P.J.
 George M. Glasser, J.
 James R. Sherck, J.
CONCUR.
[1] An "aggression trained" drug dog will become very excited and scratch and start biting an item in the presence of narcotics.
[2] Evid.R. 403(A) provides that evidence may be excluded, although relevant, if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.