JOURNAL ENTRY and OPINION
Appellant Cornel Otonoga appeals the trial court's decision to admit the chemical analysis of his urine sample in connection with charges that Otonoga drove his motor vehicle while under the influence of alcohol and illegal drugs. Otonoga assigns the following as error for our review:
 THE TRIAL COURT ERRED IN NOT SUPPRESSING THE URINE SAMPLE OF THE DEFENDANT AND ITS CHEMICAL ANALYSIS.
Having reviewed the record and the legal arguments of the parties, we reverse the trial court's decision. The apposite facts follow.
The City of Cleveland charged Cornel Otonoga with driving under the influence of alcohol or drugs,[1] driving under the influence of alcohol or drugs with prohibited blood level,[2] seat belt violation, and failure to control. These charges arose out of an automobile accident that rendered Otonoga unconscious. While at the hospital, a technician obtained a urine sample from Otonoga, which tested positive for alcohol, cocaine, and cocaine metabolite.
During the motion to suppress hearing, Sonya Kennick, a medical technologist at MetroHealth hospital, testified regarding the urine sample. Although not present in the laboratory, Kennick, nevertheless stated: A urine sample was taken from Otonoga at 3:40 A.M., Saturday, January 15, 2000. The sample was placed in a specimen jar, labeled, and sent via a pneumatic tube to the chemical analysis laboratory. A technician then performed a chemical analysis, and placed the sample into the laboratory's refrigerator, which maintains a temperature between two degrees and eight degree Celsius.
Otonoga moved to suppress the sample arguing Kennick had no actual knowledge of who received the specimen into the laboratory or if the specimen was properly refrigerated. The trial court initially granted the motion; however upon the City's motion to reconsider, the trial court vacated its previous order and admitted the urinalysis results. Otonoga pleaded no contest to both DUI counts and the city nolled the remaining charges. The trial court then entered findings of guilt on the DUI charges. This appeal follows.
In his sole assignment of error, Otonoga focuses on whether the prosecution failed to demonstrate a proper chain of custody and whether Otonoga's urine sample was properly refrigerated. Our standard of review under each query is whether the trial court's factual findings are supported by competent, credible evidence.[3] Even though Otonoga consolidated these two issues into a single assignment of error, and we apply the same standard of review for each, we consider these issues separately as they present different substantive queries.
Chain of custody is a part of the authentication and identification mandate set forth in Evid.R. 901 and the state has the burden of establishing the chain of custody of a specific piece of evidence.[4]
In satisfying this burden, the state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur.[5] Consequently, any alleged breaks in the chain of custody are relevant only to the weight of the evidence, not its admissibility.[6]
The urine sample taken from Otonoga was labeled and then delivered via a pneumatic tube to the laboratory where Kennick claimed it was tested by a technician and locked in a refrigerator until she arrived Tuesday morning. Kennick's testimony ostensibly establishes a sound chain of custody; however, Otonoga's urine sample had been in the laboratory over seventy-two hours before Kennick was even aware it existed. Her testimony is entirely based on faith that her co-workers strictly complied with laboratory protocols, which require a prompt test on each new sample followed by immediate placement of the sample in a locked refrigerator.
Otonoga argues the chain of custody is terminally broken because the prosecution failed to link the taking of Otonoga's urine on Saturday to Kennick's testing of the urine on Tuesday. Otonoga asserts that absent testimony regarding the receipt of the urine into the laboratory and the proper storage of the urine until Tuesday, we cannot be reasonably certain that substitution, alteration, or tampering did not occur. We agree.
The chain of custody, in this case, requires testimony as to the laboratory's receipt of the specimen and whether it was under proper custody until Kennick's arrival Tuesday morning. These two links are conspicuously absent from the record before us. Although under certain instances we may presume regularity in a chain of custody,[7] in this present case, there is a complete lack of substantial evidence regarding two vitally important links in the chain. Despite Kennick's testimony regarding laboratory procedures, we cannot be reasonably certain the chain of custody remained substantially intact.
Regarding refrigeration of his urine sample, Otonoga refers us to Ohio Administrative Code Section 3701-53-05(F) which states:
 (F) While not in transit or under examination, all urine and blood specimens shall be refrigerated.
The burden is upon the prosecution to demonstrate that it properly refrigerated the urine sample while not in transit or under examination; however, strict compliance is not necessary.[8] The prosecution may satisfy its burden by demonstrating substantial compliance.[9] Kennick testified that the sample arrived at the laboratory Saturday morning and that a laboratory technician performed a chemical analysis. She further testified that when she arrived at the laboratory Tuesday morning she found Otonoga's urine in the refrigerator which is normally kept between two degrees and eight degrees Celsius. Despite Kennick's faith in her co-worker's adherence to laboratory protocols, her testimony fails to establish that Otonoga's urine sample was properly refrigerated between the time it arrived in the laboratory and the time Kennick arrived Tuesday morning. Kennick's testimony only establishes that the urine sample was in the refrigerator when she arrived at the laboratory; we still do not know when the sample was placed in the refrigerator. Based upon her testimony, it could have been left unrefrigerated for over three days and placed in the refrigerator mere moments before Kennick's arrival. Consequently, the prosecution failed to show substantial compliance with Department of Health regulations regarding refrigeration of Otonoga's urine sample.
In the absence of any testimony other than Kennick's, we determine that the prosecution failed to establish a proper chain of custody and compliance with Department of Health regulations regarding refrigeration of Otonoga's urine sample. Accordingly, we reverse the decision of the trial court. Because Otonoga entered his plea after the trial court admitted the urine sample into evidence, we hold his plea was likely a product of that decision. Consequently, we vacate Otonoga's plea. We reverse the trial court's denial of Otonoga's motion to suppress and remand the matter for further proceedings in accordance with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Cleveland Cod. Ord. 433.01(A)(1).
[2]Cleveland Cod. Ord. 433.01(A)(2).
[3] See State v. Bays (1999), 87 Ohio St.3d 15, 21, 716 N.E.2d 1126,1136, certiorari denied (2000), 120 S.Ct. 1727, 146 L.Ed.2d 647; State v. Prim, 134 Ohio App.3d 142, 730 N.E.2d 455 (1999), motion for leave to file delayed appeal denied (2000), 88 Ohio St.3d 1436,724 N.E.2d 811.
[4] State v. Brown (1995), 107 Ohio App.3d 194, 200, 668 N.E.2d 514,517, citing State v. Barzacchini (1994), 96 Ohio App.3d 440, 457-458,645 N.E.2d 137, 148.
[5] Brown, quoting State v. Blevins (1987), 36 Ohio App.3d 147,150, 521 N.E.2d 1105, 1109.
[6] State v. Blevins (1987), 36 Ohio App.3d 147, 150, 521 N.E.2d 1105,1109.
[7] See City of Cleveland v. Harmon (November 24, 1993), Cuyahoga App. No. 64139, unreported.
[8] See State v. Plummer (1986), 22 Ohio St.3d 292, 490 N.E.2d 902.
[9] Id.