DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which, following a jury trial, found appellant, Jesse Lumpkin, guilty of the offense of possession of crack cocaine, a violation of R.C. 2925.11(A) and (C)(4)(d), a felony of the second degree. Appellant appeals this judgment and asserts that the following error occurred in the proceedings below:
 {¶ 2} "The jury's verdict was not supported by the weight of the evidence."
 {¶ 3} The following facts, as adduced at appellant's trial, are relevant to the disposition of this assignment of error.
 {¶ 4} At some point early in the year 2001, Detective Kenneth W. Dewitt, Jr., a member of the Toledo Police Vice Narcotics Unit, learned of complaints concerning activities occurring at a house located at 1113 Joel Avenue, Lucas County, Ohio. These complaints alleged that "drug activity," gambling and prostitution were taking place at that location. During March 2001, Detective Dewitt engaged in a surveillance of 1113 Joel Avenue and witnessed a large number of individuals coming, both on foot and in vehicles, to those premises. These individuals stayed only for short periods and then left. Detective Dewitt testified that he believed that this was an indication of drug activity; therefore, he obtained a search warrant for the Joel street address.
 {¶ 5} Shortly after midnight on April 7, 2001, Detective Dewitt and other members of the vice narcotics unit, including Detective Robert Furr, Detective Shelly Kilburn and Detective Keith Dressel, met the Toledo Police Directed Patrol Unit, i.e., the swat team, in the alley behind 1113 Joel Avenue.
 {¶ 6} The swat team went in through the rear of the residence while the detectives secured the perimeter. Dewitt and the other named detectives moved to the front of the house. Dewitt and Kilburn were on one side of the house and Furr was on the other side. Each of these detectives carried a mag light, a large flashlight with brighter illumination. The detectives turned these lights on when the swat team made its entrance.
 {¶ 7} When the swat team burst through the rear door, three people ran out the front door. It is undisputed that appellant was the first person out of the house. Kilburn testified that as appellant ran, she saw him throw a white object on the grass. This object was later retrieved by Kilburn; it was a large plastic baggie containing individualized bags of what appeared to be rocks of crack cocaine. Kilburn later gave the large baggie to Dewitt, who, as the head of the search operation, was required to inventory any evidence seized on the premises.
 {¶ 8} When Kilburn saw appellant throw the plastic baggie, she ordered appellant to lay on the ground. However, he turned to the right and ran toward Detective Furr. In his testimony, Furr stated that he also ordered appellant to the ground. As appellant went down, he opened his hand to balance himself and a pill bottle fell out. After he retrieved the pill bottle, Furr opened it and discovered what appeared to be rocks of crack cocaine inside. The rocks were individually packaged in smaller plastic bags within a larger plastic bag which, in turn, was within the bottle. Furr gave the bottle to Detective Dewitt.
 {¶ 9} At the trial of this case, Kilburn identified appellant as the individual who threw the large baggie, and Furr identified appellant as the person who dropped the pill bottle. According to Dewitt, when he field tested both the rocks in the large baggie and the rocks in the pill bottle, he detected the presence of cocaine.
 {¶ 10} Detective Keith Dressel aided Dewitt in processing the evidence found at 1113 Joel Avenue. Dressel provided the following testimony concerning chain of custody. The baggie and the pill bottle, along with other evidence obtained during the search, were inventoried at the scene and then transported to the Toledo Police Department. The contents of the pill bottle and the contents of the large plastic baggie were then removed. Both were placed in a single heat sealed bag identified with an evidence tag. The evidence tag contains the name and badge number of the lead detective, the individual from whom the evidence was acquired, the location in which it was found and an identification number. The heat sealed bag was logged into evidence and put in a lock box in the police station property room.
 {¶ 11} David Cogan, a criminalist working in the Toledo Police Forensic Laboratory, tested the contents of the large baggie and pill bottle and determined that it was crack cocaine. One bag contained 3.24 grams of crack cocaine and the other, 11.01 grams of crack cocaine. Cogan stated that because this evidence was in a heat sealed bag, he was required to cut it open. After testing, Cogan placed the cocaine back in the plastic bag, re-sealed it, dated it and identified the bag with the laboratory log number. This re-sealed bag, designated as Exhibit 2, was identified by Dressel and Cogan and entered into evidence.
 {¶ 12} Although he did not know the exact date upon which the scales used to weigh the cocaine were calibrated prior to his testing of the crack cocaine seized in this case, Cogan testified that the laboratory scales are calibrated once per week.
 {¶ 13} Appellant contends that the verdict is against the manifest weight of the evidence in two respects. First, appellant argues that the evidence offered at his trial failed to demonstrate, beyond a reasonable doubt, that the crack cocaine recovered at 1113 Joel Avenue was in the possession of appellant. Second, appellant contends that discrepancies in the testimony of the state's witnesses, including Cogan's inability to name a specific date upon which the scales were calibrated, renders the identification at trial of the crack cocaine alleged to be in the possession of appellant against the manifest weight of the evidence.
 {¶ 14} Our standard for the review of appellant's contentions requires us to act as a "thirteenth juror." State v. Thompkins(1997),78 Ohio St.3d 380, 388. Therefore we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v.Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983)20 Ohio App.3d 172, 175. The evidence in this case does not weigh heavily against a conviction. That is, sitting as the "thirteenth juror," we cannot disagree with the jury's resolution of the testimony offered at trial.
 {¶ 15} R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." "Possess" or "possession" is defined by R.C. 2925.01(K) as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Here, the eyewitness testimony of Detectives Kilburn and Furr establish, beyond a reasonable doubt, that appellant was in control of the large baggie containing crack cocaine and the pill bottle that held a bag of crack cocaine. Thus, a determination by the jury that appellant possessed crack cocaine was not against the manifest weight of the evidence.
 {¶ 16} The supposed "discrepancies" in the testimony of the witnesses concerning identification of the crack cocaine go to the chain of custody of this evidence. We must point out, however, that appellant is inaccurate in citing testimony that creates at least one of the alleged discrepancies. Specifically, appellant claims that Dewitt testified that "two baggies containing crack were found in the pill bottle." Dewitt never made this statement. Instead, the cited portion of his testimony was made in reference to Exhibit 2-the exhibit that contained both the crack cocaine found in the large plastic baggie and the crack cocaine found in the pill bottle.
 {¶ 17} As to the remaining discrepancies, the facts set forth above establish that the prosecution satisfied its burden of establishing a proper chain of custody. State v. Earle (1997), 120 Ohio App.3d 457,471, quoting State v. Blevins (1987), 36 Ohio App.3d 147. In doing so, the prosecution only needed to demonstrate that it is reasonably certain that substitution, alteration or tampering did not occur. Id. Therefore, any breaks in the chain of custody went only to the weight of the evidence. State v. Richey (1992), 64 Ohio St.3d 353, 360.
 {¶ 18} Accordingly, the jury's conclusion that the crack cocaine offered into evidence at trial was that possessed by appellant during the early morning hours of April 7, 2001 was not against the manifest weight of the evidence. Appellant's sole assignment of error is found not well-taken.
 {¶ 19} On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J., Mark L. Pietrykowski, J., and GeorgeM. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.