JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Edward Walker ("appellant"), appeals from his conviction of two counts of drug possession, two counts of drug trafficking, one count of carrying a concealed weapon, one count of having a weapon under disability, and one count of possession of criminal tools. In connection with his appeal, appellant asserts two assignments of error.
 I {¶ 2} For his first assignment of error, appellant contends that his conviction was against the manifest weight of the evidence. In support of his contention, appellant maintains that there was no evidence to link the drugs and the gun in the car to him and that there was improper authentication to admit the drugs and gun into evidence. For the following reasons, we find appellant's contention without merit.
 {¶ 3} On August 5, 2000, two Cleveland police officers were on patrol as part of the Fresh Start Unit, which assignment includes patrolling quality of life issues, such as drug activity and traffic enforcement. Around the area of Superior Avenue and East 117th Street, which is a known high drug area, the police officers observed a Ford Explorer in an empty parking lot with a large group of males surrounding it. One of the police officers, Officer Hupka, observed another male standing in the middle of the street, watching the officers. When the police officers drove toward the Ford Explorer, Officer Hupka heard the man standing in the street yell, "They're coming" and the large group of males dispersed from the vehicle. The man in the street also walked away.
 {¶ 4} As the police officers arrived approximately 20 feet behind the Ford Explorer, the Ford Explorer attempted to back up. Officer Hupka yelled to stop, as the vehicle would have hit the police car, and the vehicle stopped. The two police officers exited their police car, Officer Hupka walked around to the passenger side of the Ford Explorer, and Officer Kaloczi, Officer Hupka's partner, walked to the driver's side, which seat was occupied by appellant. Officer Hupka observed the passenger with what appeared to be marijuana seeds and crumbs on his lap and detected the fresh smell of marijuana emanating from the vehicle. The passenger informed Officer Hupka that he and appellant (the driver) had just smoked a blunt. Officer Hupka then requested that the passenger exit the vehicle so that he could perform a "pat down." According to Officer Hupka, the passenger fled.
 {¶ 5} While Officer Hupka was talking to the passenger, Officer Kaloczi asked appellant if there were any drugs in the car. Appellant first told him no, but then said he had marijuana, pulled out a bag of marijuana from his left shirt pocket, and then, after showing Officer Kaloczi the marijuana, placed the bag back into his shirt pocket. Officer Kaloczi asked appellant to exit the vehicle to perform a "pat down," where $1,050 was found on appellant. While Officer Kaloczi was patting down appellant, Officer Hupka came around from the other side of the vehicle to inform him that the passenger just fled and that he should handcuff appellant. Handcuffs were placed on appellant and he was placed under arrest.
 {¶ 6} Officer Hupka then performed a search of the vehicle. In his search, Officer Hupka discovered in the center console of the vehicle a shaving kit bag which contained many bags of marijuana and crack cocaine. Underneath the shaving kit bag, Officer Hupka found a loaded handgun. All of the items found in the vehicle were noted and handed over to the detectives and scientific investigation unit for analysis. The drugs tested positive for marijuana and crack cocaine, respectively, and appellant stipulated to these results.
 {¶ 7} Appellant was later interviewed by Detective Thompson, where he learned that appellant had prior convictions (to which he later stipulated) and that appellant was currently unemployed. Although appellant flatly denied any knowledge of the gun, he knew of the marijuana and the crack cocaine seized by the police. Later, appellant was charged with and indicted on two counts of drug possession (one for marijuana and one for cocaine), two counts of drug trafficking (one for each of the two types of drugs), one count of carrying a concealed weapon, one count of possessing a weapon under disability, and one count of possession of criminal tools.
 {¶ 8} The proper test to be used when addressing the issue of manifest weight of the evidence is set forth as follows:
 {¶ 9} "Here, the test [for manifest weight] is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *" State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526, ¶ 8, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215,485 N.E.2d 717; see, also, Tibbs v. Florida (1982), 457 U.S. 31,102 S.Ct. 2211, 72 L.Ed.2d 652.
 {¶ 10} The weight of the evidence and credibility of the witnesses are primarily for the trier of fact. Moore, at ¶ 8, citing State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Moore, at ¶ 8, citing Martin.
 {¶ 11} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, adopted the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926. These factors, which are not exhaustive, include:
 {¶ 12} "1) Knowledge that even a reviewing court is not required to accept the incredible as true;
 {¶ 13} "2) Whether evidence is uncontradicted;
 {¶ 14} "3) Whether a witness was impeached;
 {¶ 15} "4) Attention to what was not proved;
 {¶ 16} "5) The certainty of the evidence;
 {¶ 17} "6) The reliability of the evidence;
 {¶ 18} "7) The extent to which a witness may have a personal interest to advance or defend their testimony; and
 {¶ 19} "8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary." Mattison, 23 Ohio App.3d at syllabus.
 {¶ 20} Here, it cannot be said that the trial court[1] "clearly lost its way" by finding appellant guilty of all counts. First, there was substantial and credible evidence that appellant possessed marijuana and crack cocaine, as possessing such drugs, according to R.C. 2925.11(A), includes mere possession, in addition to use of cocaine. "Possession" means having control over the substance. See R.C. 2925.01(K). Appellant had actual possession of a bag of marijuana which he showed to Officer Kaloczi by pulling it out of his left shirt pocket. In addition, while proof of presence in the vicinity of drugs is not enough to prove possession, if the evidence presented at trial supports that the drugs were in appellant's constructive possession, such as where the appellant was in close proximity to the drugs, a rational trier of fact can conclude that it was within the appellant's dominion and control. Statev. Pruitt (1984), 18 Ohio App.3d 50, 58, 480 N.E.2d 499; see, also,Maryland v. Pringle (2003), ___ U.S. ___, 124 S.Ct.795 (holding that it was a reasonable inference from the facts that any or all three of the occupants of the vehicle had "knowledge of, or exercised dominion and control over" the drugs found in the back-seat armrest, which was accessible to all three occupants). Appellant had numerous bags of marijuana and crack cocaine in the center console of the vehicle he was driving, which was in such close proximity to appellant as to conclude that appellant had dominion and control over the drugs. It is immaterial that the vehicle was not owned by appellant, as he was driving the vehicle and the additional drugs were located in the center console immediately to the right of appellant. Contrary to appellant's arguments, there was evidence that linked the drugs to appellant.
 {¶ 21} Second, there was credible evidence that linked the gun to appellant. R.C. 2923.12(A) provides that "[n]o person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance." The Committee Comment to R.C. 2923.12
states:
 {¶ 22} "The section prohibits having or carrying any deadly weapon or dangerous ordnance, either concealed or on one's person, or concealed where it may be readily picked up and used."
 {¶ 23} Appellant argues that the gun could not be linked to him because the passenger could also have used the gun. This argument fails because appellant and the passenger had the same access to the gun in the center console and both could have been charged with carrying a concealed weapon. Simply because appellant was charged with the crime and the passenger, who still remains unknown, was not does not mean that appellant's ready access to the loaded gun may be ignored. There was, therefore, credible evidence linking appellant to the gun.[2]
 {¶ 24} Finally, appellant's argument that there was a lack of proper authentication to admit the drugs or gun into evidence is without merit. Evid.R. 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Chain of custody is a part of the authentication and identification mandate set forth in Evid.R. 901(A) and the state has the burden of establishing the chain of custody of a specific piece of evidence. State v. Barzacchini (1994), 96 Ohio App.3d 440,457-458, 645 N.E.2d 137. The state's burden, however, is not conclusive since "the state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur." State v. Blevins
(1987), 36 Ohio App.3d 147, 150, 521 N.E.2d 1105. Even if a chain of custody is broken, it goes to the weight afforded the evidence, not its admissibility. Id.
 {¶ 25} Here, the state produced evidence that the drugs and the gun were seized by police, that the police contacted their detective and the scientific investigative unit, and that the drugs and gun were properly marked as evidence. The state also produced evidence that the drugs and the gun were stored in the evidence locker and/or property room and removed for the purposes of trial. Likewise, the state established that there was no substitution, alteration or tampering of the evidence by way of testimony from the police officers who stated that the drugs and the gun were in the same condition as they were originally found. Upon review of the record, there was proper authentication of the drugs and the gun to be admitted into evidence. Thus, appellant's conviction is not against the manifest weight of the evidence.
 II {¶ 26} For his second assignment of error, appellant contends that he was denied due process of law because of ineffective assistance of counsel. In support of his contention, appellant asserts that his counsel failed to pursue a motion to suppress, failed to object to the lack of authentication of the drugs and the gun, and failed to raise the issue of carrying a concealed weapon for defensive purposes. For the following reasons, we find appellant's second assignment of error without merit.
 {¶ 27} To prove "ineffective assistance of counsel," appellant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive him of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052,80 L.Ed.2d 674. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph three of the syllabus, citing Strickland,466 U.S. at 694.
 {¶ 28} First, appellant maintains that his counsel should have, but did not, pursue a motion to suppress because the evidence seized by the police was obtained from an illegal search. In Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court held that a police officer may stop and investigate unusual behavior, even without probable cause to act, when he reasonably concludes that the individual is engaged in criminal activity. In justifying that conclusion, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id. at 21.
 {¶ 29} Here, the specific and articulable facts as testified by the police officers, included observing a large group of males surrounding the Ford Explorer in a vacant lot in an area where drug activity is rampant, a "look out" man in the middle of the street who informed the others by yelling, "They're coming," when he saw the police car, the group of males dispersing upon hearing the signal, and the vehicle attempting to leave by backing up and almost hitting the police car. The police officers yelled "stop" to the driver of the vehicle to avoid a collision with the police car and once stopped, the police officers approached the vehicle. When the police officers approached the vehicle, Officer Hupka observed what appeared to be marijuana seeds and crumbs in the passenger's lap and he smelled fresh marijuana. It was at this point that the police officers verified that criminal activity was afoot and asked both the driver and the passenger to exit the vehicle to conduct a "pat down," in which Officer Kaloczi found drugs and money on appellant and Officer Hupka found drugs and a gun in the vehicle.
 {¶ 30} The Supreme Court of Ohio in State v. Terrell, Cuyahoga App. No. 80676, 2002-Ohio-4913, ¶ 30, quoting United States v.Robinson (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, held that "[p]ursuant to a search incident to arrest, the police may conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well." Because the evidence seized by the police officers was obtained as a result of a legal search, counsel's failure to move for a motion to suppress was not deficient.
 {¶ 31} Second, as discussed in appellant's first assignment of error, counsel's failure to object to the lack of proper authentication as to admitting the drugs and gun into evidence cannot be said to be deficient where such objection goes only to the weight of the evidence and not the admissibility. As a result, the outcome, even if counsel's performance was deficient, would be the same.
 {¶ 32} Finally, appellant maintains that his counsel's performance was deficient because he failed to raise the issue that appellant was carrying the gun for defensive purposes.
 {¶ 33} R.C. 2923.12(C) provides as follows:
 {¶ 34} "(C) It is an affirmative defense to a charge under this section of carrying or having control of a weapon other than dangerous ordnance, that the actor was not otherwise prohibited by law from having the weapon, and that any of the following apply:
 {¶ 35} "(1) The weapon was carried or kept ready at hand by the actor for defensive purposes, while the actor was engaged in or was going to or from the actor's lawful business or occupation, which business or occupation was of such character or was necessarily carried on in such manner or at such a time or place as to render the actor particularly susceptible to criminal attack, such as would justify a prudent person in going armed.
 {¶ 36} "(2) The weapon was carried or kept ready at hand by the actor for defensive purposes, while the actor was engaged in a lawful activity and had reasonable cause to fear a criminal attack upon the actor or a member of the actor's family, or upon the actor's home, such as would justify a prudent person in going armed.
 {¶ 37} "(3) The weapon was carried or kept ready at hand by the actor for any lawful purpose and while in the actor's own home.
 {¶ 38} "(4) The weapon was being transported in a motor vehicle for any lawful purpose, and was not on the actor's person, and, if the weapon was a firearm, was carried in compliance with the applicable requirements of division (C) of section 2923.16 of the Revised Code."
 {¶ 39} Although it is incredible that appellant actually argues that he carried the gun for defensive purposes, especially when appellant denied having knowledge of the gun and claimed that it was his girlfriend's gun, appellant cannot possibly maintain that he possessed the gun for any of the enumerated, lawful defensive purposes listed in R.C. 2923.12(C). Appellant was unemployed at the time of the offense, he was not at home, he presented no evidence that he feared a criminal attack, and he presented no evidence that the gun was carried in the vehicle lawfully, which means unloaded. See R.C. 2923.16(C). Because appellant cannot claim any of the enumerated defensive purposes for carrying the gun, his counsel's failure to raise such defense is not deficient performance by any stretch of the imagination. Thus, appellant was not denied the effective assistance of counsel.
 {¶ 40} The judgment is affirmed.
Judgment affirmed.
Ann Dyke and Sean C. Gallagher, JJ., concur.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
[1] Here, the trial court was the trier of fact because appellant waived his right to a jury trial.
[2] It is interesting that appellant does not assert on appeal, as he presented at trial, that the gun belonged to his girlfriend. This testimony was rebutted by evidence that the gun was not registered.