**The STATE of Ohio, Appellee,**

v.

**BLANTON, Appellant.**

[Cite as *State v. Blanton,* 184 Ohio App.3d 611, 2009-Ohio-5334.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–844.

Decided Oct. 6, 2009.

</div>

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellee.

Yeura R. Venters, Franklin County Public Defender, and Paul Skendelas, Assistant Public Defender, for appellant.

CONNOR, Judge.

{¶ 1} Defendant-appellant, Robert Blanton, appeals the conviction and judgment for the offense of failing to provide notice of change of address, in violation of former R.C. 2950.05.[1]  For the reasons that follow, we affirm in part, reverse in part, and remand for retrial.

{¶ 2} In August 2006, appellant was convicted of the offense of unlawful sexual conduct with a minor and received a sentence of three years on community control.  The judgment entry classified appellant as a sexually oriented offender.

{¶ 3} In March 2007, appellant was convicted of the offense of gross sexual imposition and received a one-year prison sentence.  The judgment entry classified appellant as a habitual sex offender.

{¶ 4} On November 8, 2007, a grand jury indicted appellant on one count of failure to provide notice of change of address, in violation of R.C. 2950.05.  The indictment alleged that appellant failed to provide notice to the Franklin County Sheriff's Department 20 days before changing his address on or about October 4 to October 6, 2007.  The indictment listed only appellant's gross sexual imposition as the basis for the duty to register.  On the morning of trial, appellee asked to amend the indictment to include appellant's conviction for unlawful sexual conduct with a minor as another or alternate basis.  The trial court granted the amendment over appellant's objection.

{¶ 5} During trial, appellant stipulated that he was required to provide notice of a change of his address based upon a prior conviction.  It is the alleged failure

---

1.  Unless otherwise specified, all references to the sections of R.C. Chapter 2950 will refer to the version in effect in October 2007, before the amendments associated with S.B. No. 10 took effect.

to comply with this admitted duty that comprises the factual allegations in this matter.

{¶ 6} On July 29, 2008, the jury found appellant guilty of the charge, as indicted. On August 26, 2008, appellant appeared for the sentencing hearing on the failure-to-provide-notice conviction, in addition to motions to revoke probation. With regard to the motions to revoke probation, appellant's prior counsel stipulated to the violations of probation as a result of the new conviction. With regard to the failing-to-provide-notice conviction, the court imposed a sentence of 17 months' incarceration, to run consecutively with the sentences in case Nos. 05CR–01–435 and 05CR–06–3665.[2] In total, appellant's aggregate sentence was for a term of six years and ten months. Additionally, the court waived fines but imposed court costs.

{¶ 7} Appellant appeals from the conviction and judgment and raises the following six assignments of error:

[I.] The trial court improperly exposed the jury to inadmissible out-of-court declarations on a critical element of the prosecution in violation of the Ohio Rules of Evidence.

[II.] The trial court erred in admitting statements given by out-of-court declarants to law enforcement officials in violation of the Confrontation Clauses of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

[III.] The state improperly misled Appellant into believing that he was subject to community notification, thereby, resulting in the loss of housing opportunities. The State's action constituted a due process violation under the state and federal Constitutions, warranting discharge.

[IV.] There was insufficient competent, credible evidence to support the jury's verdict, thereby denying Appellant due process under the state and federal Constitutions.

[V.] The trial court erred in denying the [defendant's] motion to dismiss the indictment on the grounds that Senate Bill 10 repealed the registration and reporting requirements contained in R.C. 2950.05.

[VI.] The trial court erred in failing to instruct the jury that the mental element for a violation of R.C. 2950.05 is recklessness and in denying Appellant's request for an instruction on recklessness, thereby denying Appellant Due Process under the state and federal Constitutions.

{¶ 8} For ease and clarity, we will address the assignments of error out of order. First, we consider appellant's fifth assignment of error, which presents

---

**2.** These cases have no relation to the instant appeal.

the position that the Ohio General Assembly created a six-month hiatus in the registration requirements for sex offenders from July 1, 2007, through January 1, 2008. Specifically, appellant notes the different effective dates for the bill's sections and argues that former R.C. 2950.05 was repealed six months before current R.C. 2950.05 became effective. Further, appellant's alleged conduct occurred during this six-month time frame. Therefore, appellant argues that his alleged conduct occurred at a time when such conduct was not prohibited by statute. Consequently, appellant argues that he could not be convicted of a crime based upon his alleged conduct during this six-month time frame.

{¶ 9} We must first note that appellant stipulated to the element of the offense that he was required to provide notice of change of address as a result of his prior convictions. Although appellant's counsel explained that she felt obligated to enter the stipulation based upon the amendment to the indictment, we find that she had no such obligation. The duty to comply with the registration requirements may arise from one prior conviction or two. Whether appellant had one or two prior convictions is immaterial if he indeed had the duty to provide notice, as he stipulated. Despite this stipulation, appellant now argues that he was not required to provide notice under the law as it existed in October 2007.

{¶ 10} It is well settled that a stipulation binds its parties to "all matters of fact and law concerned in the stipulation." *State v. Barstow*, 4th Dist. No. 02CA27, 2003-Ohio-7336, 2003 WL 23529694, ¶ 38, citing *State v. Martin* (Apr. 19, 2002), 6th Dist. No. L–01–1214, 2002 WL 597332; see also *State v. Jenkins*, 11th Dist. No.2006–L–266, 2007-Ohio-4770, 2007 WL 2696801, ¶ 35. Therefore, because appellant stipulated that he was required to provide notice, we find that appellant has waived this assignment of error. Appellant may not stipulate at trial that he was required to provide notice and thereafter argue on appeal that he was not required to provide notice.

{¶ 11} However, even if we did not find that appellant waived this assignment of error, courts have uniformly rejected the substance of appellant's hiatus argument. See *State v. Goodwin* (Dec. 6, 1984), 10th Dist. No. 83AP–599, 1984 WL 6021, *2 ("intent of the legislature was clearly to delay the effective date for the new penalties, not to create a period of time during which the acts could be performed without fear of punishment"); see also *Cox v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 501, 508, 21 O.O.3d 313, 424 N.E.2d 597 ("repealing clause must be construed to take effect upon the effective date of the amended section"). The trial court's disposition of appellant's motion to dismiss followed this well-established line of reasoning. As a result, we overrule appellant's fifth assignment of error because appellant was required to notify the sheriff of a change of address in accordance with R.C. 2950.05.

■ {¶ 12} We will next consider appellant's sixth assignment of error, which regards the culpable mental state necessary to establish a violation of R.C. 2950.05. Appellant argues that no mental state is specified in R.C. 2950.05, such that proof of recklessness is required. Conversely, appellee argues that a violation of R.C. 2950.05 is a strict-liability offense, so proof of a mental state is not required.

{¶ 13} R.C. 2901.21(B) governs the issue and provides:

When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

■ {¶ 14} It is well settled that courts must first consider the words of a statute to determine the legislative intent. *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, ¶ 10, citing *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 304 N.E.2d 378. Therefore, we must consider the language of R.C. 2950.05, which provides:

(A) If an offender * * * is required to register pursuant to section 2950.04 or 2950.041 [2950.04.1] of the Revised Code, the offender * * * at least twenty days prior to changing the offender's * * * residence address, * * * shall provide written notice of the residence, * * * address change, as applicable, to the sheriff with whom the offender * * * most recently registered.
* * *

(E)(1) No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section shall fail to notify the appropriate sheriff in accordance with that division.

{¶ 15} R.C. 2950.05 clearly does not specify a mental state. Therefore, we must determine whether R.C. 2950.05 plainly indicates a legislative intent to impose strict liability. If it does not, then the catchall mental state of recklessness must be proven to establish a violation of R.C. 2950.05. See R.C. 2901.21(B). The Eighth and Sixth Appellate Districts have decided this precise issue in regard to R.C. 2950.05. See *State v. Beasley* (Sept. 27, 2001), 8th Dist. No. 77761, 2001 WL 1152871; see also *State v. Robinson*, 6th Dist. No. E–07–020, 2009-Ohio-2921, 2009 WL 1719359.

{¶ 16} In *Beasley*, 2001 WL 1152871, the defendant was found guilty of one count of failing to provide notice of a change of address, in violation of a prior version of R.C. 2950.05. Id. On appeal, the defendant argued that the evidence was insufficient to establish the requisite element of recklessness. Id. In

response, the Eighth Appellate District held, " '[W]hen a statute reads "no person shall" engage in proscribed conduct, absent any reference to a culpable mental state, the statute indicates a legislative intent to impose strict liability.' " *Beasley* at *3, quoting *State v. Shaffer* (1996), 114 Ohio App.3d 97, 103, 682 N.E.2d 1040, and citing *State v. Cheraso* (1988), 43 Ohio App.3d 221, 540 N.E.2d 326. Further, *Beasley* cited *State v. Schlosser* (1997), 79 Ohio St.3d 329, 681 N.E.2d 911, which analyzed Ohio's racketeering statute and held that R.C. 2901.21(B) does not apply to statutes that define mala prohibita crimes where " 'the acts are made unlawful for the good of the public welfare regardless of the state of mind.' " *Beasley* at *3, quoting *Schlosser* at 333, 681 N.E.2d 911. Finally, *Beasley* noted that the legislative purpose of the registration requirements was to " 'protect the safety and general welfare of the people of this state.' " Id. at *4, quoting *State v. Williams* (2000), 88 Ohio St.3d 513, 518, 728 N.E.2d 342; see also R.C. 2950.02(B). As a result, *Beasley* held that a violation of R.C. 2950.05 constitutes a strict-liability offense. Id.

{¶ 17} In *Robinson*, 2009-Ohio-2921, 2009 WL 1719359, the defendant was indicted on a charge of failing to register a change of address. Id. at ¶ 1, fn. 1. He challenged the indictment because it failed to specify a culpable mental state. Id. at ¶ 8. Further, he argued that proof of recklessness was required under R.C. 2901.21(B). Id. The Sixth Appellate District rejected this argument and instead followed *Beasley*. *Robinson* at ¶ 11–17. Specifically, *Robinson* held: "[The] failure to register as required under R.C. 2950.05(A) is a strict liability offense. There is no mens rea element to the offense." Id. at ¶ 17.

{¶ 18} Appellant attempts to distinguish this matter based upon the changes in the registration statutes. Specifically, appellant notes that the current statute affords the affirmative defense of impossibility due to a lack of knowledge. See current R.C. 2950.05(G). As a result, appellant argues that the statute does not indicate a legislative intent to impose strict liability. However, this affirmative defense is not a new phenomenon. Rather, it was formerly codified in R.C. 2950.05(F) and was available in *Robinson*. Nevertheless, the Sixth Appellate District found that R.C. 2950.05 defines a strict-liability offense. Therefore, we find that the changes in the registration requirements do not require a departure from the legal analysis set forth by *Beasley* and *Robinson*.

{¶ 19} It is true that the Supreme Court of Ohio has held that the usage of the phrase "no person shall" does not by itself evince a plain legislative intent to impose strict liability. *State v. Moody*, 104 Ohio St.3d 244, 2004-Ohio-6395, 819 N.E.2d 268, ¶ 16. Rather than relying on this phrase alone, courts must consider other indicia to determine whether the General Assembly intended to impose strict liability. Id.; see also *State v. Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000, ¶ 25, quoting *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-

2121, 767 N.E.2d 242, ¶ 30; see also *State v. Bowersmith,* 3d Dist. No. 14–02–02, 2002-Ohio-3386, 2002 WL 1434057, ¶ 17. To determine legislative intent, courts have considered (1) whether the statute specifies a mental state for one element of the offense and omits it from another, (2) whether the offense is malum prohibitum, and (3) whether the legislature has taken a "strong stance" against certain types of crimes. Id.; see also *State v. Lozier,* 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770; *Moody*; *Beasley*; and *Bowersmith.*

{¶ 20} Regarding the first consideration, it is clear that no portion of R.C. 2950.05 specifies a mental element. Therefore, this consideration provides no guidance on the issue of whether the General Assembly intended to define a strict-liability offense. The statute at issue herein is distinguishable from those in *Lozier, Moody,* and *Maxwell.*

{¶ 21} As for the second consideration, a malum prohibitum offense is "[a]n act that is a crime merely because it is prohibited by statute, although the act itself is not necessarily immoral." Black's Law Dictionary (9th Ed.2009). As this relates to R.C. 2950.05, the act of failing to notify the sheriff of a change of address is not necessarily immoral by itself. Instead, appellant's alleged conduct constitutes a crime merely because of his prior convictions and the existence of R.C. 2950.05. For these reasons, we find that a violation of R.C. 2950.05 constitutes a malum prohibitum offense. This finding supports the conclusion that the General Assembly intended to define a strict-liability offense.

{¶ 22} Finally, we may consider whether the General Assembly has taken a "strong stance" against these types of crimes. See *Clay, Maxwell,* and *Bowersmith.* In this regard, we believe an analysis of the history and progression of the registration requirements is relevant in order to determine the General Assembly's stance on the matter.

{¶ 23} Ohio's sex-offender registration statutes date back to 1963. *State v. Cook* (1998), 83 Ohio St.3d 404, 406, 700 N.E.2d 570, citing former R.C. Chapter 2950, 130 Ohio Laws 669. However, in 1996, the General Assembly implemented major changes to the statutes to provide classification, registration, and community-notification procedures. *Cook* at 407, 700 N.E.2d 570, citing Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, 2601. Since these changes, the General Assembly has repeatedly amended the statutes to provide stricter and more burdensome requirements. Indeed, the Supreme Court of Ohio recently recognized that "additional obligations are now imposed" upon sex offenders in accordance with R.C. Chapter 2950. *State v. Williams,* 114 Ohio St.3d 103, 2007-Ohio-3268, 868 N.E.2d 969, ¶ 9.

{¶ 24} Despite these changes, the General Assembly has expressed a consistent set of principles underlying the registration requirements. First, it is well understood that sexual predators and habitual sex offenders have a high risk of

recidivism. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 10; see also *Cook*; see also R.C. 2950.02(A)(2). In recognition and appreciation of this understood risk, the General Assembly has taken a proactive position in effort to keep the public abreast of information about sex offenders. See R.C. 2950.02(A)(1). Specifically, the General Assembly believes that the registration and notification procedures will enable the members of the public to better protect themselves and their children from sex offenders. Id. The ultimate goal is to " 'protect the safety and general welfare of the people of this state.' " *Cook*, 83 Ohio St.3d at 406, 700 N.E.2d 570, quoting former R.C. 2950.02(B). These goals have been deemed a "paramount governmental interest." See R.C. 2950.02(A)(2); see also *State v. Williams* (2000), 88 Ohio St.3d 513, 525, 728 N.E.2d 342; see also *Cook* at 421, 700 N.E.2d 570,

{¶ 25} Based upon the history, progression, and stated purpose of R.C. Chapter 2950, we believe that the General Assembly has taken a strong stance to protect the public from sex offenders. Additional support stems from the numerous statutes providing for criminal liability for similar acts. See *Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000, at ¶ 25, quoting *Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242, at ¶ 30. Therefore, this finding further supports the conclusion that the General Assembly intended to define a strict-liability offense by enacting R.C. 2950.05.

{¶ 26} Having considered the statutory language, the other indications, and the established case law, we find that R.C. 2950.05 indicates a plain legislative intent to impose strict liability. See *Beasley*, 2001 WL 1152871, and *Robinson*, 2009-Ohio-2921, 2009 WL 1719359. Other courts have reached the same conclusion when interpreting different registration statutes. See *State v. Hardy*, 9th Dist. No. 21015, 2002-Ohio-6457, 2002 WL 31662666 (requirement to verify current residence address under former R.C. 2950.06 is a strict-liability offense), see also *Cook*, 83 Ohio St.3d at 420, 700 N.E.2d 570 (under former R.C. 2950.04, "[t]he act of failing to register alone, without more, is sufficient to trigger criminal punishment"); see also *State v. Beckley*, 8th Dist. No. 83254, 2004-Ohio-2977, 2004 WL 1277358 (quoting rule established in *Cook* ).

{¶ 27} Based upon the foregoing, we find that the trial court did not err when it chose not to instruct the jury on the issue of recklessness. We therefore overrule appellant's sixth assignment of error.

{¶ 28} We will next consider appellant's first and second assignments of error, which regard evidentiary issues raised during trial. Specifically, appellant argues that the jury was exposed to inadmissible hearsay, which violated the Ohio Rules of Evidence and appellant's rights under the confrontation clauses of the United States and Ohio Constitutions.

{¶ 29} During trial, appellee presented four witnesses. First, appellee called Officer Terri Bodell, who was appellant's parole officer. She testified that appellant notified her that he would be residing in room number 115 at a motel located at 1800 Harrisburg Pike. Officer Bodell testified that she went to the motel on October 10, 2007, to verify that appellant was indeed residing at the address he provided. She testified that she went to the room and knocked on the door several times. When nobody answered, she testified that she then went to the motel's management office.

{¶ 30} As Officer Bodell began testifying about her conversations with motel management, appellant's counsel objected on hearsay grounds. Over this objection, Officer Bodell testified, "I asked whether or not Mr. Blanton was there. I was told no." Appellant renewed the objection, which the court overruled before instructing Officer Bodell to continue. Again, Officer Bodell testified, "I was told no, that he wasn't residing there any longer." Next, Officer Bodell testified about receipts that demonstrated the dates for which appellant had paid. Officer Bodell then testified that she found out that appellant had left before the final date for which he had paid. Again, appellant objected to this testimony. At this point, the court provided a cautionary instruction to the jury that Officer Bodell's testimony was to be used as background information demonstrating her investigation, rather than actual evidence that appellant was not living at the motel at the time. After providing the instruction, the court again overruled appellant's objection.

{¶ 31} Finally, Officer Bodell testified that she left her business card with the motel management and asked for them to call her if they saw appellant. She indicated that she never received such a call.

{¶ 32} As its next witness, appellee called appellant's probation officer, Officer Frank Buzaki. Officer Buzaki testified that he conducted a field visit at the motel to verify appellant's address on October 10, 2007. Officer Buzaki testified that he was unaware of the exact room appellant had registered for. Therefore, he testified that he visited the rental office and explained the purpose of his visit.

{¶ 33} When Officer Buzaki began testifying about his discussions with motel management, appellant objected. After the court overruled the objection, Officer Buzaki testified that the gentleman in the rental office identified himself as the owner and stated that appellant was no longer living at that address. Appellee's counsel then asked Officer Buzaki whether the owner knew whether appellant had previously resided at the motel, at which point appellant's counsel again objected. After the court overruled the objection, Officer Buzaki testified that the owner pointed to a room number and said that appellant had been living there, but was no longer there because someone else was living there now. At

the conclusion of Officer Buzaki's testimony, the court gave a cautionary instruction similar to that which was provided after Officer Bodell's testimony.

{¶ 34} As its next witness, appellee called Detective Tony Wassmuth, who at all relevant times was assigned to the sex-offender unit of the Franklin County Sheriff's Department. Detective Wassmuth testified that he had received complaints indicating that appellant was not living at the address he had registered. As a result, Detective Wassmuth went to the motel to conduct an investigation.

{¶ 35} As Detective Wassmuth began testifying about the discussions he had with motel owners and the receipts demonstrating when appellant had resided at the motel, appellant objected. After the court overruled appellant's objection, Detective Wassmuth testified that the receipts "said he had paid through October 5th, but [management] hadn't seen him since October 4th."

{¶ 36} As its final witness, appellee called Detective David Crabtree of the Franklin County Sheriff's Sex Offender Registration and Notification Unit. Detective Crabtree testified that he met with appellant and registered the motel as appellant's address on September 21, 2007. He did not again meet with appellant until after his arrest.

{¶ 37} It is well settled that hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Generally, hearsay is inadmissible unless it falls within an exception. Evid.R. 802.

{¶ 38} When a statement is merely a verbal part of an act, the statement is admissible. *State v. Blevins* (1987), 36 Ohio App.3d 147, 149, 521 N.E.2d 1105, citing McCormick, Evidence (3d Ed.1984) 732, 733, Section 249. For example, statements offered to explain an officer's conduct in investigating a crime are, by definition, not hearsay. Id., citing *State v. Thomas* (1980), 61 Ohio St.2d 223, 232, 15 O.O.3d 234, 400 N.E.2d 401. However, there is a potential for abuse in admitting such statements. Id. Indeed, the issue presented by these circumstances regards the purpose for the testimony, whether it was offered for the truth of the matter asserted or to explain an officer's conduct.

{¶ 39} Given the potential for abuse, this court has imposed certain conditions before such statements may be admitted. See *Blevins* at syllabus; *State v. Culley* (Aug. 31, 1989), 10th Dist. No. 89AP–153, 1989 WL 101111; *State v. Faris* (Mar. 24, 1994), 10th Dist. No. 93APA08–1211, 1994 WL 97095; *State v. Humphrey*, 10th Dist. No. 07AP–837, 2008-Ohio-6302, 2008 WL 5104775, ¶ 11. Specifically, the conduct to be explained must be relevant, equivocal, and contemporaneous with the statements. *Faris*, citing *Blevins*; see also *State v. Easley* (June 13, 1995), 10th Dist. No. 95APA01–1, 1995 WL 360250. Further, the statements must meet the standard of Evid.R. 403(A). Id. Finally, "when the

statements connect the accused with the crime charged, they should generally be excluded." *Humphrey* at ¶ 11, citing *Culley; Blevins* at 149–150, 521 N.E.2d 1105; see also *State v. Holt* (Aug. 20, 1998), 10th Dist. No. 97APA10–1361, 1998 WL 514055.

{¶ 40} As these conditions relate to the instant appeal, the conduct to be explained involves the investigations of Officer Bodell, Officer Buzaki, and Detective Wassmuth. Indeed, their testimony consistently referred to the substance of conversations with motel management, in addition to referring to the substance of information contained in motel receipts. Appellee argued, and the court agreed, that this testimony was offered to explain the conduct in performing the investigations.

{¶ 41} On appeal, rather than arguing that the conduct was relevant, equivocal, and contemporaneous with the statements made to the investigators, appellee argues that the testimony was offered to support the investigations. Specifically, appellee argues that it offered this testimony in anticipation of the attack on the investigations during cross-examination. Therefore, in presenting this testimony, appellee essentially sought to bolster the conclusions reached by the investigators. The problem, however, is that the conclusions were almost entirely based upon what was told to the investigators by motel management. The only exception, with regard to the preliminary investigations, was the circumstantial evidence that Officer Bodell independently obtained based upon the lack of response when she knocked upon appellant's door and left her card with management.

{¶ 42} If appellee wished to bolster the investigators' testimony, it could have and indeed should have called some member of the motel management. One or more of these individuals allegedly had personal knowledge of the facts regarding appellant's residency, in addition to the conversations that occurred with the investigators.

{¶ 43} Based upon the foregoing, we find that the statements made by Officer Bodell, Officer Buzaki, and Detective Wassmuth regarding the substance of conversations and the substance of receipts went far beyond merely explaining their conduct. See *Culley*, 1989 WL 101111, and *Holt*, 1998 WL 514055. Therefore, these statements were hearsay because they were offered to demonstrate appellant's guilt. See *Faris*, 1994 WL 97095. Additionally, the consistent repetition of the detailed statements undeniably connected appellant with the crime charged. See *Culley*. Indeed, the statements described the fact that appellant had moved and the specific date upon which appellant moved. Therefore, the testimony should have been excluded. Id. The court erred by admitting this testimony.

{¶ 44} After reaching this determination, we must now consider the " 'probable impact of the * * * [statements] on the minds of an average jury.' " *State v. Kidder* (1987), 32 Ohio St.3d 279, 284, 513 N.E.2d 311, quoting *Harrington v. California* (1969), 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284. To uphold appellant's conviction, we must find that the evidence, absent the hearsay, was so overwhelming that the admission of the hearsay statements was harmless beyond a reasonable doubt. Id., see also *State v. Presley*, 10th Dist. No. 02AP-1354, 2003-Ohio-6069, 2003 WL 22681425, ¶ 33, quoting *Kidder*. For an error to be "harmless," there must be "no reasonable possibility that the error contributed to the outcome of [the] trial." *Holt*, 1998 WL 514055, *3, citing *State v. Brown* (1992), 65 Ohio St.3d 483, 485, 605 N.E.2d 46.

{¶ 45} Appellee argues that any errors were harmless because of appellant's admissions. However, after a careful review of the record, we do not find that the admissibility of hearsay was harmless beyond a reasonable doubt. Indeed, there is a reasonable possibility that the errors contributed to appellant's conviction.

{¶ 46} Officer Bodell testified that during appellant's transport to jail, he said that he could not afford to reside at the motel any longer. Additionally, during a subsequent hearing, Officer Bodell recalled that appellant indicated that he had resided at the motel for "a couple weeks."

{¶ 47} Further, when testifying about the results of the investigation, Detective Crabtree testified that he was unaware of the specific date appellant moved out of the motel. He did, however, defer to Detective Wassmuth on the issue. Specifically, the exchange provided:

Q: [D]id you have any information about when [appellant] might have moved out?

A: I didn't, but Detective Wassmuth did.

Again, however, Detective Wassmuth testified that his investigation consisted of conversations with motel managers and his observation of motel receipts. He had no independent, personal knowledge of the facts.

{¶ 48} When testifying about an October 30, 2007 interview of appellant, Detective Crabtree testified that appellant admitted that he ran out of money and moved sometime "between October 4, 2007, and I think it was October 25, 2007." Detective Crabtree also engaged in the following exchanges:

Q: What did Mr. Blanton tell you about where he was living on October 4?

A: He was staying at his uncle's.

* * *

Q: Detective Crabtree, are you indicating that Mr. Blanton specifically said he was not living at the hotel on October 4th through the 25th?

A:   Yes, he was at his uncle's.

{¶ 49} This constitutes the extent of the evidence, absent the hearsay, in support of the offense charged.   We cannot find that the evidence was so overwhelming as to conclude that the errors were harmless beyond a reasonable doubt.   Indeed, we cannot conclusively find that the jury focused only on the two spoon-fed answers provided by Detective Crabtree to support the conviction.   At the very least, we find that there is a reasonable possibility that the admission of hearsay contributed to appellant's conviction.   As a result, we sustain appellant's first and second assignments of error.

{¶ 50} In his fourth assignment of error, appellant challenges the sufficiency of the evidence supporting his conviction.   As a result, appellant argues that a discharge is warranted.

{¶ 51} When presented with these arguments, controlling case law provides:

> On review of the sufficiency of the evidence to support a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 34, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.   The Supreme Court of Ohio recently considered the issue of whether the review should analyze the admitted evidence or the evidence that should have been admitted.   See *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶ 1.

{¶ 52} Regarding this issue, *Brewer* noted that the United States Supreme Court distinguishes between reversals based upon insufficient evidence and reversals based upon trial error.   *Brewer* at ¶ 18, citing *Lockhart v. Nelson*, 488 U.S. 33, 40, 109 S.Ct. 285, 102 L.Ed.2d 265, quoting *Burks v. United States* (1978), 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1.   Specifically, *Brewer* provided:

> "While the former is in effect a finding 'that the government has failed to prove its case' against the defendant, the latter 'implies nothing with respect to the guilt or innocence of the defendant,' but is simply 'a determination that [he] has been convicted through a judicial *process* which is defective in some fundamental respect.' "

(Emphasis sic.)   *Brewer* at ¶ 18, quoting *Lockhart* at 40, 109 S.Ct. 285, 102 L.Ed.2d 265, quoting *Burks* at 15, 98 S.Ct. 2141, 57 L.Ed.2d 1.   Importantly, *Brewer* noted that a reversal based upon the admission of hearsay is precisely the type of trial error that does not present double-jeopardy implications.   *Brewer* at ¶ 20, citing *Lockhart* at 40–41, 109 S.Ct. 285, 102 L.Ed.2d 265.   Indeed, *Brewer*

explained, "[T]he state was entitled to rely upon the trial court's evidentiary ruling in deciding how to present its case." Id. at ¶ 26. As a result, *Brewer* concluded:

> [T]he court's error in admitting hearsay testimony does not implicate the type of governmental oppression that the Double Jeopardy Clause is intended to prevent. Hence, reversal of Brewer's conviction based upon this error allows him to " 'obtai[n] a fair readjudication of his guilt free from error.' "

Id. at ¶ 20, quoting *Lockhart* at 42, 109 S.Ct. 285, 102 L.Ed.2d 265, quoting *Burks* at 15, 98 S.Ct. 2141, 57 L.Ed.2d 1.

{¶ 53} After viewing the admitted evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, while we find that a reversal is necessary based upon trial errors, we do not find that a discharge is warranted based upon insufficient evidence. Accordingly, we overrule appellant's fourth assignment of error. A discharge is not proper in these circumstances. Instead, we reverse and remand for retrial.

{¶ 54} Finally, having determined that a retrial is necessary, we decline to address appellant's third assignment of error as moot. During retrial, appellant may present any and all affirmative defenses he feels applicable.

{¶ 55} Accordingly, appellant's fourth, fifth, and sixth assignments of error are overruled; appellant's first and second assignments of error are sustained; and we decline to address appellant's third assignment of error as moot. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. This matter is therefore remanded for retrial in a manner consistent with this decision.

<div align="right">

Judgment affirmed in part
and reversed in part,
and cause remanded.

</div>

KLATT and TYACK, JJ., concur.