[Cite as *State v. Carroll*, 2021-Ohio-2172.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| JOSON R. CARROLL, | : | Case No. 20 CAA 09 0039 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Delaware County
                                Court of Common Pleas, Case No.
                                19 CR I 11 0775

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               June 25, 2021

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

MELISSA A. SCHIFFEL                     WILLIAM T. CRAMER
Delaware County                         470 Olde Worthington Rd., Suite 200
Prosecuting Attorney                    Westerville, Ohio 43082

By: PAYTON ELIZABETH THOMPSON
Delaware County Assistant Prosecutor
145 N. Union Street, 3rd Floor
Delaware, Ohio 43015

*Baldwin, J.*

{¶1}   Defendant-appellant Joson Carroll appeals his conviction from the Delaware County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On November 22, 2019, the Delaware County Grand Jury indicted appellant on one count of failure to notify of residence change in violation of R.C. 2950.05(F)(1), a felony of the second degree.   At his arraignment on December 16, 2019, appellant entered a plea of not guilty to the charge.

{¶3}   Thereafter, a bench trial commenced on September 1, 2020. The following testimony was adduced at trial.

{¶4}   In 2013, appellant was listed on the sex offender registry after he was convicted in Licking County for illegal use of minors in nudity-oriented materials in violation of R.C. 2907.323. Appellant, who was a Tier II sex offender, was required to register every 180 days for twenty-five years.

{¶5}   Valerie Hooper maintained the sex offender registry for the Delaware County Sherriff's Office .Her office is located at the Delaware County Jail. Hooper testified that when she first came into contact with appellant in 2014, he was living in Delaware County but registered as homeless in Licking County. She testified that appellant started registering in Licking County in July of 2013.

{¶6}   Hooper testified that appellant was claiming to be homeless in Licking County but was actually living in an apartment in Sunbury, Ohio but had not registered with Delaware County. She first met appellant when he was picked up an unrelated

charge in Delaware County. Hooper testified that there was a specific procedure for homeless registrants to follow and that appellant previously had utilized that procedure.

{¶7} In 2014 and in 2016, appellant had pled guilty to lesser included offenses of attempted failure to provide change of address and attempted failure to register. In 2017, appellant was found guilty of failure to provide notice of change of address, a felony of the second degree, and was sentenced to prison.

{¶8} On September 27, 2020, Hooper performed a sex offender compliance check and appellant passed. On October 1, 2019, appellant changed his address to 2121 Panhandle Road, Lot 14 in Delaware, Ohio. Hooper testified that appellant properly reported his new address by calling in to report the change and then by physically coming into her office. At that address, appellant would be residing with Sarah White and Logan Bowsher who was White's boyfriend. Hooper verified appellant's address by speaking to Andrew Lewis, appellant's parole officer.

{¶9} On October 23, 2019, Hooper was talking to Lewis on another matter when he asked her if she had spoken to or heard from appellant. She had not. Lewis told her that appellant was no longer at the Panhandle Road address. Hooper then called Sarah White and was told that White had asked appellant to leave after there were complaints about appellant living there and the landlord had stated that appellant could not live there anymore. White told her that appellant had left on October 20, 2019. Hooper testified that she spoke with Kenneth Parrish, the landlord, and he stated that "he had spoken to Sarah White and that [appellant] was simply providing the phone—the address of the 2121 Panhandle, Lot 14, and was supposed to give her money to say that he was living at that address in case I showed up to check." Transcript at 127. She testified that it was not

clear to her whether appellant had been living there and been kicked out on Sunday, October 20th or whether he was just paying someone to say that he lived there when he never did and that either way there was a violation.

{¶10} After speaking with Parrish, Hooper called Little Caesars, appellant's employer, and was told that appellant had been suspended.

{¶11} Hooper testified that she should have heard from appellant on Monday the day after he moved out but did not hear from him again until November 6, 2019. On November 6, 2019, appellant left a voicemail for Hooper stating that he was living in cars and was busy with work and mental health appointments   and needed to reregister as homeless. She testified that the only phone calls from appellant were on October 1, 2019 and November 6, 2019 and that the only time that appellant came in was on October 1, 2019.

{¶12} Hooper testified that on January 23, 2020, she made contact with Lindsay Wolford after listening to appellant's jail phone calls. Wolford told her that appellant had come to stay with her for approximately 10 days. The first time that he stayed over was in mid-November of 2019. After Wolford found out that appellant had a warrant, she asked him to leave. Appellant left the day prior to Thanksgiving of 2019 on foot and was arrested on an unrelated charge on November 29, 2019.  He left his belongs in Wolford's shed until he could pick them up. During the time that appellant stayed with Wolford, appellant left a few times to see his children and girlfriend. Wolford testified that appellant never asked to borrow her phone.  She testified that if asked, she would have permitted appellant to use his phone to contact his probation officer.

{¶13} At the trial, Sarah White testified that appellant moved in with her approximately October 5, 2019. On October 20, 2019, Kenneth Parrish, her landlord, told her that appellant could not live there anymore because he was a sex offender. White told appellant who gathered his belongings and left. White also called Hooper and left her a voicemail. When Hooper called her back the next day, White told her that appellant had to move.

{¶14} Kenneth Parrish, the landlord, testified that he was told by a resident of his mobile home community that a sex offender was using Lot 14 of 2121 Panhandle Road as his address. Parrish checked online and found that appellant was listed on the sex offender registry as living at Sarah White's trailer. According to Parrish, White told him that appellant was going to give her money to use her address as his residence but had not paid her.  He further testified that White told him that appellant came over once in a while in case Hooper showed up to see if he was living there. Parrish denied telling White that appellant had to leave, but told her that he had to get the address off of the registry. Afterwards, Parrish did not hear any more complaints about appellant.

{¶15} Appellant testified in his own defense at trial.  During his testimony, he confirmed that he left the Panhandle address on or about October 20, 2019.  He testified that he stayed with a friend, Christina Hair, in Marion County and Hair's mother in Delaware County for a few days. Appellant further testified that he stayed in a car a few times and with his friend Mike a few days. He testified that he stayed in another friend's car prior to messaging Lindsay Wolford and ended up staying with her for about ten days.

{¶16} Appellant, during his cross-examination, testified that he had previously registered as homeless with Hooper, so he was familiar with the process. He testified that

he was worn out from walking everywhere and trying to find a place to sleep and trying to keep his counseling appointments that the reporting requirement was not a high priority. According to appellant, it also was not a high priority because Hooper had allowed him, on numerous occasions, to go more than three weeks without registering a new address and had been understanding and helpful on other occasions. He testified that when he reported over the voicemail of November 6, 2019, he thought that he was in compliance because he had "done it several times before." Transcript at 216.

{¶17} Appellant now appeals, raising the following assignment of error on appeal:

{¶18} "I. THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶19} Appellant, in his sole assignment of error on appeal, argues that his conviction for failing to notify of a change in address in violation of R.C. 2950.05(F)(1) is against the manifest weight of the evidence. We disagree.

{¶20} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio-355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

{¶21} "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 63, at 191-192 (1978).

**{¶22}** The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 2001-Ohio-1290, 752 N.E.2d 904. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, *superseded by statute on other grounds as stated in In re Z.E.N., 4th Dist. Scioto No. 18CA3826, 2018-Ohio-2208*, ¶ 27. In other words, "[w]hen there exists two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24.

**{¶23}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost

its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721(1st Dist. 1983).

**{¶24}** Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**{¶25}** In the case sub judice, appellant was convicted of failing to notify of a change in address in violation of R.C. 2950.05(F)(1). Such section provides that "No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section or a change in vehicle information or identifiers pursuant to division (D) of this section shall fail to notify the appropriate sheriff in accordance with that division." An offender is required to provide such notice at least twenty days prior to changing the address. R.C. 2950.05(A).

**{¶26}** Failure to provide change of address is under R.C. 2950.05 is a strict liability offense. See, e.g., *State v. Blanton*, 184 Ohio App.3d 611, 2009-Ohio-5334, 921 N.E.2d 1103, ¶ 21 (10th Dist.). Culpability is thus not required for a person to be found guilty. R.C. 2901.21(B).

**{¶27}** In the case sub judice, there was testimony that appellant was living at the Panhandle address where he had registered from October 1, 2019 to on or about October 20, 2019. He left the Panhandle address on or about October 20, 2019. After leaving the Panhandle address, appellant, over the next 40-day period, stayed in a number of places, including a car, with Christina Hair, with a man named Mike, and with Lindsay Wolford.

{¶28} During the 40-day period, the only time that appellant tried to contact Valerie Hooper was on November 6, 2019 when he left her a voice mail message. In the message, appellant indicated that it was "clearly his fault. I should have called you" and also indicated that he needed to reregister as homeless. Transcript at 258. Appellant did not leave a callback number and did not come in to see Hooper the day after placing the call.

{¶29} There was testimony that Hooper, other than the voice mail message, did not hear from appellant between October 1, 2019 and his arrest in late November of 2019. The trial court, as trier of fact, was in the best position to assess the credibility of the witnesses. The trial court found that appellant failed to provide notice of change of address to the Delaware County Sheriff during such time.

{¶30} R.C. 2950.05(G) states, in relevant part, as follows: (1) It is an affirmative defense to a charge of a violation of division (F)(1) of this section that it was impossible for the person to provide the written notice to the sheriff as required under division (A) of this section because of a lack of knowledge, on the date specified for the provision of the written notice, of a residence, school, institution of higher education, or place of employment address change, and that the person provided notice of the residence, school, institution of higher education, or place of employment address change to the sheriff specified in division (A) of this section as soon as possible, but not later than the end of the first business day, after learning of the address change by doing either of the following:

{¶31} (a) The person provided notice of the address change to the sheriff specified in division (A) of this section by telephone immediately upon learning of the address

change or, if the person did not have reasonable access to a telephone at that time, as soon as possible, but not later than the end of the first business day, after learning of the address change and having reasonable access to a telephone, and the person, as soon as possible, but not later than the end of the first business day, after providing notice of the address change to the sheriff by telephone, provided written notice of the address change to that sheriff.

{¶32} (b) The person, as soon as possible, but not later than the end of the first business day, after learning of the address change, provided written notice of the address change to the sheriff specified in division (A) of this section.

{¶33} The trial court found that appellant clearly had failed to provide written notice of the address change to the Sheriff no later than the end of the first business day after learning of the address change. The trial court further found, in relevant part, as follows:

{¶34} So the question is whether he provided notice of the address change to the sheriff by telephone immediately.  Or if not having reasonable access to a telephone at that time, as soon as possible, but not later than the end of the first business day after learning of the change and having reasonable access to a telephone, so long as the person, not later than the next business day, after providing the telephone notice, then also provides written notice.  So if you're going to take advantage of that, you can't just call; you have to call and then follow it up with a written notice the next day.

{¶35} It's [appellant's] burden to prove his affirmative defense by the preponderance of the evidence.  The only possible telephone notice that was provided here was the 11-6 voicemail.  There's no other telephone voicemail or message or phone call that was ever put into evidence.

**{¶36}** I find that this is - - did not suffice to meet the requirements of the statute because there was no information given in that voicemail about where [appellant] could be found. And even if he had provided that, the statute again says he needs to provide written notice to the sheriff no later than the next business day, which would have been November 7th. That didn't happen.

**{¶37}** I also - - We had discussion yesterday because I - - This part of the statute I think is interesting, and I think it's for situations like this. When is it reasonable to conclude somebody has access to a telephone? I, in this instance, find that it's reasonable to conclude that [appellant], at some point over a 40-day period, would have had access to a telephone, either whether it was from Ms. Hair, from Mike, from somebody else, somebody he was staying with. Perhaps, I think most noteworthy here, and what I find - - it kind of clicked in my head last night - - is [appellant] testified that he wasn't sure how to get from Panhandle down to the jail.

**{¶38}** But in 40 days, he went different places. The testimony was from his own mouth that he was able to travel 20 miles up the road to Marion to stay with Ms. Hair, but couldn't, obviously, then make it two and a half miles, a tenth of that, down the road to the jail to see Ms. Hooper.

**{¶39}** Transcript at 263-264.

**{¶40}** We note that at trial, both Logan Bowsher and Lindsay Wolford testified that they would have let appellant use their phones if he had asked to borrow it. Sarah White, who lived at the Panhandle address, also testified that she would have let appellant use her phone if he asked. She further testified that her house was about two and a half miles from the Delaware County Jail where Hooper's office is located.

**{¶41}** Based on the foregoing, we find that the trial court, as trier of fact, did not lose its way in convicting appellant of failure to notify of a change in address in violation of R.C. 2950.05(F)(1).

**{¶42}** Appellant's sole assignment of error is, therefore, overruled.

**{¶43}** Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Baldwin, P.J.

Gwin, J. and

Wise, Earle, J. concur.