[Cite as *State v. Woodfork*, 2014-Ohio-3608.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 14AP-88 |
| | | (C.P.C. No. 12CR-6455) |
| William Woodfork, Jr., | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 21, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

*Yavitch & Palmer Co., L.P.A.,* and *Jeffery A. Linn, II*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} William Woodfork, Jr., was convicted on a charge of aggravated burglary in violation of R.C. 2911.11 and was sentenced to nine years of incarceration. He has now pursued a direct appeal and assigns two errors for our consideration:

> [I.] THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S CRIM. R. 29 MOTION FOR JUDGMENT OF ACQUITTAL, AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
>
> [II.] THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY PROVISIONS OF

THE OHIO CONSTITUTION BECAUSE THE VERDICT OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 2} We note initially that the sentencing entry has a mistake in it. The entry notes, correctly, that Woodfork was convicted of aggravated burglary but then refers to a violation of R.C. 2911.01, the statute governing aggravated robbery. A nunc pro tunc entry should be journalized.

{¶ 3} The primary issue raised is whether the State of Ohio proved beyond a reasonable doubt that the person who burglarized a residence on East 16th Avenue and who encountered the resident during the burglary was William Woodfork, Jr.

{¶ 4} The identification testimony at trial came in two forms. The occupant of the residence testified that Woodfork was the person she encountered in her residence at the time of the burglary. DNA evidence at the trial indicated that Woodfork's DNA was on a straw from a cup from a Subway restaurant found on the porch of the residence near the likely point of entry.

{¶ 5} Police had no likely suspects until Woodfork's DNA showed up on the straw in the Subway cup. Police then showed the woman, who was the primary victim, a photo array which included Woodfork's picture. The victim identified Woodfork as being the burglar and was sure of her identification. She eventually identified Woodfork as being the burglar during her testimony at trial.

{¶ 6} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. *Id.* "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. *Jenks* at 273. If the

court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant.  *See Thompkins* at 387.

{¶ 7}  Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence.  *Thompkins* at 387.  In so doing, the court of appeals, sits as a " 'thirteenth juror' " and, after " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' "  *Id.* (quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983)); *see also Columbus v. Henry*, 105 Ohio App.3d 545, 547-48 (10th Dist.1995).  Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' "  *Thompkins* at 387.

{¶ 8}  As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, *see* [*State v.*] *DeHass* [10 Ohio St.2d 230 (1967)], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."  *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996).  It was within the province of the jury to make the credibility decisions in this case.  *See State v. Lakes* 120 Ohio App. 213, 217 (4th Dist.1964), ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness.")

{¶ 9}  The first assignment of error is phrased in terms of Crim.R. 29, but a Crim.R. 29 motion is supposed to be sustained only when the evidence is not sufficient to support a conviction:  " The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal  of  one or  more  offenses  charged  in the indictment,  information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A).  "[A] court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."  *State v. Bridgeman*, 55 Ohio St.2d 261 (1978), syllabus.  Thus, we apply the sufficiency analysis set forth above.

{¶ 10} The testimony of the victim who identified Woodfork as the burglar was clearly sufficient to support the conviction for aggravated burglary. Aggravated burglary is defined by R.C. 2911.11 as follows:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
>
> (B) Whoever violates this section is guilty of aggravated burglary, a felony of the first degree.
>
> (C) As used in this section:
>
> (1) "Occupied structure" has the same meaning as in section 2909.01 of the Revised Code.
>
> (2) "Deadly weapon" and "dangerous ordnance" have the same meanings as in section 2923.11 of the Revised Code.

{¶ 11} The person the victim identified as Woodfork encountered the burglar carrying two laptop computers and her purse down her steps from the bedroom area. The woman grabbed the burglar's shirt to try to stop him from leaving. The burglar claimed to have a gun, so she let him go. He left through the front door of the residence carrying the stolen property. Her purse and some of its contents were found nearby.

{¶ 12} The testimony at trial was more than sufficient to demonstrate that an aggravated burglary occurred and Woodfork was the burglar.

{¶ 13} The first assignment of error is overruled.

{¶ 14} The second assignment of error questions some of the state's evidence and asks us to reweigh the evidence. We note there are no separate assignments of error

attacking the admissibility of the identification testimony from the victim and/or the admissibility of the DNA evidence from the straw in the Subway cup.

{¶ 15} The DNA evidence is questioned on appeal through attacking the chain of evidence necessary for the straw and cup to be admitted into evidence at trial. It is the state's burden to establish a proper chain of custody, however that duty is not absolute. *State v. Blevins*, 36 Ohio App.3d 147, 150 (10th Dist.1987)( The state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur). Breaks in the chain of custody go to the weight afforded it not the admissibility of evidence. *Id.* The authentication of physical evidence can be proven inferentially. *Id.* at 151. "The practicalities of proof do not require the state to negate all possibilities of substitution or tampering. The state need only establish that it is reasonably certain that substitutions, alteration or tampering did not occur." *State v. Moore*, 47 Ohio App.2d 181, 183 (9th Dist.1973).

{¶ 16} To the extent a chain of evidence was the subject of trial testimony, Gregory Meyer, a Columbus Police Division Officer who responded to the burglary call, testified that he took possession of the cup and straw at the burglary scene. He gave it to another officer to turn in to the police property room. The officer who collected the cup originally apparently did not see it again until the trial years later. The officer who took the items to the property room did not testify.

{¶ 17} Clearly there was a substantial lapse in the chain of custody, but not so great is to completely undermine the admissibility of the cup and straw as evidence. Meyer testified that it looked to be the same cup and straw and that it looked to be in the same condition as when Meyer last saw it.

{¶ 18} Appellate counsel attempts to undermine the identification testimony of the victim by asserting that the photo array was shown to her over one year after the burglary and after she had been told that police had a DNA match. Five factors must be considered when evaluating the reliability of a photo array under the totality of circumstances test:

> "(1) the witness's opportunity to view the offender at the time of the crime, (2) the witness's degree of attention at the time of the crime, (3) the accuracy of the witness's prior description of the offender, (4) the witness's level of certainty when identifying the suspect at the confrontation, and (5) the length

> of time that elapsed between the crime and the confrontation."

*State v. Monford*, 190 Ohio App.3d 35, 50, 2010-Ohio-4732 (10th Dist.2010), quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

{¶ 19} The delay is a factor for our consideration, but does not overbalance how sure the victim was that the photo of Woodfork was the photo of the burglar. Telling the victim that police had a DNA match might well have led the victim to conclude that the person police believed was the burglar had his photo in the array. However, that by itself does not convey which of the six photos was the "correct" photo from a police standpoint.

{¶ 20} In most photo array situations, the victim of a crime knows someone in the array is a likely suspect, otherwise the police would not be asking them to look at photos. The photo array here was not unduly suggestive of one particular photo as being that of the likely culprit.

{¶ 21} Following the standards incumbent on us as an appellate court in addressing the weight of the evidence, we cannot say the jury rendered a verdict against the weight of the evidence.

{¶ 22} The second assignment of error is overruled.

{¶ 23} Both assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.